1  KIRKLAND & ELLIS LLP
2  Daniel E. Laytin (admitted *pro hac vice*)
   dlaytin@kirkland.com
3  300 North LaSalle
   Chicago, IL 60657
4  Telephone: (312) 862-2000
   Facsimile: (312) 862-2200
5  *Counsel for Defendants Trina Solar Limited and Trina Solar (U.S.), Inc.*

6  SIMPSON THACHER & BARTLETT LLP
7  James Kreissman (SBN: 206740)
   jkreissman@stblaw.com
8  2475 Hanover Street
   Palo Alto, California 94304
9  Telephone: (650) 251-5000
   Facsimile: (650) 251-5002
10 *Counsel for Defendants Yingli Green Energy Holding Co. Ltd. and Yingli Green Energy Americas, Inc.*

11 SHEARMAN & STERLING LLP
12 James Donato (SBN: 146140)
   jdonato@shearman.com
13 Four Embarcadero Center, Suite 3800
   San Francisco, CA 94111-5994
14 Telephone: (415) 616-1100
   Facsimile: (415) 616-1199
15 *Counsel for Defendants Suntech Power Holdings Co. Ltd. and Suntech America, Inc.*

16 [Additional Counsel listed on Signature Block]

17          **UNITED STATES DISTRICT COURT**
           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
18                    **OAKLAND DIVISION**

19

20 The Solyndra Residual Trust, by and through     CASE No. CV-12-05272-SBA (EDL)
   its Liquidating Trustee, R. Todd Neilson,
21                                                  **DEFENDANTS' JOINT NOTICE OF**
                   Plaintiff,                       **MOTION AND MOTION TO DISMISS**
22                                                  **PLAINTIFF'S FIRST AMENDED**
          v.                                        **COMPLAINT; MEMORANDUM OF**
23                                                  **POINTS AND AUTHORITIES IN**
   Suntech Power Holdings Co., Ltd., Suntech        **SUPPORT THEREOF**
24 America, Inc., Trina Solar Limited, Trina Solar
   (U.S.), Inc., Yingli Green Energy Holding        **Before the Hon. Saundra B. Armstrong**
25 Company Limited, Yingli Green Energy             **Date: June 4, 2013**
   Americas, Inc.,                                  **Time: 1:00 p.m.**
26                 Defendants.

27

28

**Table of Contents**

Page

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

STATEMENT OF THE ISSUES ............................................................................... 1

SUMMARY OF THE ARGUMENT ......................................................................... 1

INTRODUCTION ........................................................................................................ 2

FACTUAL BACKGROUND ...................................................................................... 3

I.      Background Regarding the Photovoltaic Solar Panel Industry ................... 3

II.     Background Regarding Plaintiff's Conspiracy Allegations ......................... 4

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ................................................................................................................ 6

I.      Solyndra Fails to Allege a Plausible Conspiracy Under Section 1 of the Sherman Act ........ 6

        A.      The Complaint Does Not Allege Basic Facts Suggesting an Agreement ................... 6

        B.      Plaintiff's Recast Allegations Still Utterly Fail to Meet the Requirements for a Predatory Pricing Claim ........................................................................ 10

        C.      Solyndra's Reliance on the Unrelated DOC and ITC Investigations Does Not Help Its Claims ........................................................................ 13

II.     Solyndra Has Not Suffered Any Antitrust Injury and Therefore Lacks Standing to Sue Under the Sherman Act ................................................................ 15

III.    Solyndra Has Failed to Plead an Adequate Product or Geographic Market ........................ 17

        A.      Plaintiff Has Failed to Plead an Adequate Product Market ........................................ 17

        B.      Plaintiff Has Failed to Plead an Adequate Geographic Market ................................. 19

IV.     Solyndra's State Law Claims Should Be Dismissed ........................................................ 20

        A.      Plaintiff's Claims Under the Cartwright Act and for Interference With Prospective Economic Advantage Fall With Its Sherman Act Claim ............................ 20

        B.      The Court Should Decline Jurisdiction Over the Remaining State Law Claims or Dismiss Them on the Merits ................................................ 21

                1.      The Court Should Decline to Exercise Supplemental Jurisdiction ............... 21

                2.      The Complaint Fails to State a Claim Under California's Unfair Practices Act Because It Fails Adequately to Allege Specific Intent to Injure Competition or Competitors ........................................................... 21

3.      The Complaint Fails to State a Claim for Interference with Contractual Relations Because It Fails Adequately to Allege a Breach of Contract or that Defendants Induced the Breach ............................................................ 23

CONCLUSION .......................................................................................................................... 25

**Table of Authorities**

Page

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
748 F. Supp. 2d 323 (D. Vt. 2010) ........................................................................ 20

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
300 F.3d 620 (5th Cir. 2002) ................................................................................. 19

*Apple Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 24

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*,
459 U.S. 519 (1983) ............................................................................................... 17

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) .................................................................................... 10, 15, 16

*Augustine v. Trucco*,
124 Cal. App. 2d 229 (1954) ................................................................................. 25

*Bay Guardian Co. v. New Times Media LLC*,
114 Cal. Rptr. 3d 392 (Ct. App. 2010) ............................................................ 21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................... 6, 7, 8, 9

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999) ......................................................................... 18, 19

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ......................................................................................... 10, 16

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ......................................................................................... 17, 18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ............................................................................................... 15

*Cal. Comp. Prods., Inc v. IBM*,
613 F.2d 727 (9th Cir. 1979) ................................................................................. 16

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) ............................................................................................... 16

*Cascade Health Solutions v. Peace Health,*
   515 F.3d 883 (9th Cir. 2008)........................................................................... 13, 16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
   973 P.2d 527 (Cal. 1999) ............................................................................... 22, 23

*Church & Dwight Co., Inc. v. Mayer Labs,*
   No. C–10–4429 EMC, 2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ................................ 12, 13

*Creative Copier Serv. v. Xerox Corp.,*
   344 F. Supp. 2d 858 (D. Conn. 2004) ........................................................................ 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   902 P.2d 740 (Cal. 1995) ........................................................................................ 20

*E .I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,*
   637 F.3d 435 (4th Cir. 2011)................................................................................... 19

*F.T.C. v. Lab. Corp. of Am.,*
   No. SACV 10–1873 AG (MLGx), 2011 WL 3100372 (C.D. Cal. Mar. 11, 2011) ................. 19

*Food & Grocery Bureau, Inc. v. United States,*
   139 F.2d 973 (9th Cir. 1943)................................................................................... 23

*Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.,*
   No. 10-15978, 2011 WL 1898150 (9th Cir. May 19, 2011) ...................................... 17

*Hoeck v. City of Portland,*
   57 F.3d 781 (9th Cir. 1995)................................................................................... 21

*Imperial Ice Co. v. Rossier,*
   18 Cal. 2d 33 (1941)............................................................................................ 25

*In re Elevator Antitrust Litig.,*
   502 F.3d 47 (2d Cir. 2007) ..................................................................................... 7

*In re Ins. Brokerage Antitrust Litig.,*
   Nos. 04–5184, 05–1079, 2006 WL 2850607 (D.N.J. Oct. 3, 2006) ........................... 8

*In re Late Fee and Over-Limit Fee Litig.,*
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................... passim

*In re Nuvelo, Inc., Sec. Litig.,* C 07-4056 VRW, 2008 WL 5114325 (N.D. Cal. Dec. 4,
   2008)................................................................................................................ 23

*Janich Bros. Inc. v. Am. Distilling Co.,*
   570 F.2d 848 (9th Cir. 1977)................................................................................. 15

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008)........................................................................... 6, 10

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 Fed. Appx. 554 (9th Cir. 2008) ........................................................................... 17

*Malaney v. UAL Corp.*,
    No. 10-17208, 2011 WL 1979870 (9th Cir. May 23, 2011) ..................................... 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................... 11

*Mayor and City Council of Baltimore, Maryland v. Citigroup, Inc.*,
    Case No. 10-0722-cv (L) (2d Cir. Mar. 5, 2013) ....................................................... 7

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ..................................................................................... 17

*Multistate Legal Studies, Inc. v. Harcourt Brach Jovanovich Legal & Prof. Publ'ns, Inc.*,
    63 F.3d 1540 (10th Cir. 1995) ................................................................................... 12

*Newcal Indus., Inc. v. Ikon Office Solutions*,
    513 F.3d 1038 (9th Cir. 2008) .............................................................................. 17, 18

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
    202 F.3d 1088 (9th Cir. 2000) ................................................................................... 20

*Pac. Bell Tele. Co. v. Linkline Commc'ns, Inc.*,
    555 U.S. 438 (2009) ................................................................................................... 10

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*,
    867 F. Supp. 925 (D. Or. 1994) ................................................................................. 14

*Rachford v. Air Line Pilots Ass'n, Int'l*,
    284 F. App'x 473 (9th Cir. 2008) .............................................................................. 24

*S.F. Design Ctr. Assocs. v. Portman Cos.*,
    50 Cal. Rptr. 2d 716 (Ct. App. 1995), 911 P.2d 1373 (Cal. 1996) ........................... 21

*Sapiro v. Musicians' Union of S.F., Local No. 6*,
    C-87-850 AJZ, 1987 WL 58071 (N.D. Cal. Dec. 21, 1987) ..................................... 24

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ....................................................................................... 6

*Silicon Knights v. Crystal Dynamics*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ......................................................................... 20

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .............................................................................. 22, 23

*Syverson v. IBM Corp.*,
    472 F.3d 1072 (9th Cir. 2007) ..................................................................................... 6

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961) ............................................................................................ 19

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................................ 21

*United States v. Cont'l Can Co.*,
    378 U.S. 441 (1964) ............................................................................................ 18

*United States v. E. I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) ............................................................................................ 18

*United States v. Gen. Dynamics Corp.*,
    341 F. Supp. 534 (N.D. Ill. 1972) ...................................................................... 18

*VasoNova Inc. v. Grunwald*,
    C 12-02422 WHA, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ........................ 25

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
    65 F. Supp. 2d 1052 (N.D. Cal. 1998) ......................................................... 11, 16

*William Inglis & Sons Baking Co. v. ITT Cont. Baking Co., Inc.*,
    668 F.2d 1014 (9th Cir. 1981) ............................................................................ 15

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ................................................................................ 9

## Statutes & Regulations

15 U.S.C. § 72 ........................................................................................................ 14

19 U.S.C. § 1673(1)–(2) .......................................................................................... 14

28 U.S.C. § 1367(c)(3) ............................................................................................ 21

Cal. Bus. & Prof. Code § 17030 ............................................................................. 22

Cal. Bus. & Prof. Code § 17043 ............................................................................. 22

Cal. Bus. & Prof. Code § 17044 ............................................................................. 22

California Cartwright Act,
    Cal. Bus. & Prof. Code § 16700 et seq. ..................................................... 2, 3, 20

California Unfair Practices Act,
    Cal. Bus .& Prof. Code § 17000 et seq. ................................................... 2, 21, 23

General Agreement on Tariffs and Trade (GATT) (19 U.S.C. §§ 3511–3556) ............ 13

North American Free Trade Agreement (19 U.S.C. §§ 3301–3473) ........................ 13

Pub. L. 108-429, Dec. 3, 2004 .............................................................................. 14

Sherman Act § 1,
     15 U.S.C. § 1 .............................................................................................. passim

Tariff Act of 1930 (19 U.S.C. §§ 1202–1683g) ................................................... 13

Trade Act of 1974 (19 U.S.C. §§ 2101–2497b) ................................................... 13

U.C.C. § 2-209 ..................................................................................................... 24

World Trade Organization (WTO) Agreement (19 U.S.C. § 3511) ...................... 13

**Other Authorities**

Harvey M. Applebaum, *The Interface of the Trade Laws and the Antitrust Laws*,
     6 Geo. Mason L. Rev. 479 (1998) ................................................................. 13

Office of the United States Trade Representative, *Trade Laws*,
     http://www.ustr.gov/about-us/trade-toolbox/trade-laws (last visited Nov. 12, 2012).............. 13

REPEAL OF SECTION 801 OF THE REVENUE ACT OF 1916,
     H.R. REP. NO.. 108-415 (2004) .................................................................... 14

United States–Anti-Dumping Act of 1916,
     WT/DS136/R (Mar. 31, 2000) ...................................................................... 14

1

## NOTICE OF MOTION

2      TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that, on June 4, 2013, at 1:00 p.m., or as soon thereafter as the

4    matter may be heard, before the Honorable Saundra B. Armstrong, Defendants[1] will and hereby do

5    move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff

6    Solyndra's Amended Complaint (the "Complaint").  This motion is based on the accompanying

7    memorandum, the complete files in this action, and such other matters as the Court may consider.

8          Defendants request that the Court grant their motion and dismiss the Complaint with

9    prejudice.

10

## MEMORANDUM OF POINTS AND AUTHORITIES

11

### STATEMENT OF THE ISSUES

12          1.      Whether Solyndra's claim under Section 1 of the Sherman Act should be dismissed

13   because Solyndra fails to allege facts sufficient to support a plausible conspiracy to lower prices.

14          2.      Whether Solyndra's Section 1 claim should be dismissed because Solyndra fails to

15   allege sufficient facts showing it suffered antitrust injury and therefore lacks standing to sue.

16          3.      Whether Solyndra's Section 1 claim should be dismissed because Solyndra fails to

17   plead an adequate product or geographic market.

18          4.      Whether the Court should dismiss each of Solyndra's state law claims for failure to

19   state a claim or decline supplemental jurisdiction over them.

20

### SUMMARY OF THE ARGUMENT

21          For the Court's convenience, Defendants provide a summary below of the main reasons

22   why the Complaint fails to state a claim with respect to any of Plaintiff's causes of action.

23          The Sherman Act claim should be dismissed for any one of these ***independent*** reasons:

24          1.      The Complaint fails to allege enough facts to support Solyndra's implausible theory

25   that Defendants conspired to ***lower*** prices for the purpose of injuring Solyndra, a conspiracy that

26   Plaintiff alleges started ***before*** Solyndra even entered the market.  *See* Section I(A).

27

28   [1] Suntech Power Holdings Co., Ltd., Suntech America, Inc., Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, and Yingli Green Energy Americas, Inc.

2.      The Complaint not only fails to allege, but affirmatively pleads, facts establishing that Defendants have not recouped, and will not recoup, losses incurred through their alleged agreement to lower prices.  *See* Section I(A).

3.      The Complaint fails adequately to allege that Solyndra, which admittedly went out of business because it could not match Defendants' low prices, was injured by anything other than market competition.  *See* Section II.

4.      The facts alleged in the Complaint affirmatively demonstrate that Solyndra's alleged product and geographic markets are facially unsustainable.  *See* Section III.

5.      Dismissal of the Sherman Act claim also necessitates dismissal of its state-law equivalent, the Cartwright Act, as well as the interference with prospective economic advantage claim, which requires that Solyndra plead an independent wrongful act.  *See* Section IV(A).

Finally, should the Court decide to exercise supplemental jurisdiction over the remaining state-law claims, these claims should be dismissed for the following reasons:

6.      The Unfair Practices Act claims fail because the Complaint affirmatively alleges facts demonstrating that it is implausible that Defendants' actions, which started  before Solyndra even entered the market, were intended to harm Solyndra.  *See* Section IV(B)(3).

7.      Solyndra's interference with contractual relations claim fails because the Complaint does not even allege a breach of contract, let alone actionable acts of inducement by Defendants.  *See* Section IV(B)(4).

**INTRODUCTION**

Defendants respectfully submit this memorandum in support of their joint motion to dismiss the claims asserted against them by Solyndra in its Complaint.  The Complaint fails to state a claim as a matter of law under either Section 1 of the Sherman Act or any of Plaintiff's state law claims, for several separate and independent reasons.

*First*, Plaintiff fails to allege a plausible conspiracy.  Plaintiff does not—and cannot—allege ***any*** direct communication between Defendants regarding price, and certainly no facts that would give rise to a plausible inference of a conspiracy to ***lower*** prices.  Instead, Plaintiff attempts to cobble together a case based on nothing more than evidence that is consistent with the rational,

self-interested business behavior of Defendants in a rapidly evolving, increasingly competitive and commoditized market.  Indeed, Defendants' alleged behavior has benefitted consumers through lower prices.  Plaintiff's conspiracy allegations also fail for the separate and distinct reason that Plaintiff adduces **no** support for its contention that Defendants will recoup the losses purportedly incurred through predatory pricing.  Plaintiff's own allegations demonstrate the opposite, which Plaintiff seeks to disguise by improperly relying on unrelated government dumping actions.

*Second*, for the same reasons set out above, Plaintiff has not pled and cannot plead antitrust injury.  Solyndra engaged in an acknowledged premium-pricing strategy; its financial misfortune is the natural consequence of vibrant competition, the very competition that the U.S. antitrust laws are designed to protect and promote.

*Third*, Plaintiff fails to plead adequate product and geographic markets.  Plaintiff effectively asserts that the requisite product market is the market for its own products, an allegation that is insufficient under well-established case law.  Similarly, despite alleging a worldwide market for sales of the relevant products, Plaintiff then inexplicably defines the relevant geographic market as the United States.  Its claims fail for this reason as well.

*Finally*, the Complaint fails to state a claim under the applicable California state-law statutes.  Plaintiff's claims under the Cartwright Act and for tortious interference with prospective economic advantage fall with its Sherman Act claim as a matter of law.  This Court should decline to exercise supplemental jurisdiction over the remaining state law claims for unfair competition and interference with contractual relations, but, even if the Court does consider those claims, each of them fails adequately to plead the requisite elements under California law.

Simply put, Plaintiff has alleged nothing more than ordinary, healthy competition in a highly competitive market.  The Complaint should be dismissed.

## FACTUAL BACKGROUND

### I.    Background Regarding the Photovoltaic Solar Panel Industry

The photovoltaic solar panel industry involves manufacturing and distributing solar panel systems that utilize different types of technology to convert sunlight into electricity.  Complaint ("Compl.") ¶¶ 25, 32.  These systems include, among other things, polysilicon-based solar panels,

1   such as those manufactured by Defendants, and "thin-film" cylindrical panels, such as those

2   manufactured by Solyndra.  *Id.* ¶¶ 26, 32.  The market includes competitors who manufacture,

3   market, and sell across the globe, in the United States, Europe, and China, among other places.

4   *Id.* ¶¶ 14, 16, 18, 80, 199.  Like other high-tech industries, the photovoltaic panel industry is

5   characterized by some barriers to entry (¶¶ 37–39) but also dynamic competition, with players

6   entering and exiting as the viability and cost-effectiveness of new technologies are tested in the

7   mettle of the market.  *Id.* ¶ 38.  As more and more manufacturers entered the market, prices for

8   solar panels in the United States and around the world dropped significantly.  *Id.* ¶¶ 194, 200, 209.

9        Solyndra, for example, initially "charged a price premium of approximately 25 percent,"

10   allegedly because its panels were less expensive to install than Defendants' panels.  *Id.* ¶ 67.  But

11   such premium prices ultimately failed to compete with the lower-cost model of Defendants' and

12   others' polysilicon panels.  In 2009, Solyndra was offering its panels for $3.69 per watt (*id.* ¶ 194),

13   at the same time that the alleged costs for at least two defendants—as calculated by the Plaintiff—

14   were far lower, between $2.52 and $2.31 per watt.  *Id.* ¶ 165 (Yingli), ¶ 166 (Suntech).

15   **II.   Background Regarding Plaintiff's Conspiracy Allegations**

16        The Complaint does not allege any specific direct communications between any of the

17   Defendants in furtherance of a conspiracy.  Instead, Plaintiff relies on allegations of parallel

18   conduct, stating that "each of the three Defendants 'coincidentally' cut their prices by 61% to

19   66%" between 2008-2011.  *Id.* ¶¶ 77–78.  Plaintiff also alleges that, at the very same time

20   Defendants were lowering prices, the U.S. photovoltaic panel market was becoming dramatically

21   more competitive.  Spurred by government subsidies, new entrants rushed into the market,

22   increasing supply and driving down prices.  As prices dropped, solar panels became more

23   attractive vis-à-vis other electricity sources, thereby driving up demand.  *Id.* ¶¶ 82–84.

24        Still, supply continued to outpace demand.  *Id.* ¶¶ 82–84 (although "Suntech's Chief

25   Strategy Officer [allegedly] planned for the United States market to triple in 2010," demand only

26   doubled); ¶¶ 101–102 (industry experts projected price decreases, even amid increases in projected

27   demand).  The solar market was becoming increasingly commoditized, with larger quantities sold

28   at ever-lower prices by competitors.  *Id.* ¶¶ 194, 200, 209.

1    Plaintiff also alleges that Defendants participated in an industry trade association and

2    allegedly "traveled, met, and socialized" together. *Id.* ¶ 97–98.  Plaintiff's most specific

3    allegations state that, in December 2007, November 2008, and January 2010, "[u]pon information

4    and belief, leaders from Suntech, Trina, and Yingli met . . . discussed prices, and agreed to lower

5    prices uniformly," and that, "[f]ollowing [each] meeting," solar panel prices for each of the

6    Defendants fell "approximately 40%," "another 18%," and "an additional 20%," respectively. *Id.*

7    ¶¶ 92, 94, 96.  Solyndra fails to provide any details regarding these alleged communications or any

8    specific time period for the alleged price declines, however. *Id.*  To the contrary, Solyndra

9    acknowledges that prices ***continually*** dropped throughout 2008-2011. *Id*. ¶ 77.

10    Plaintiff additionally cites unrelated trade investigations conducted by the International

11    Trade Commission ("ITC") and the Department of Commerce ("DOC"), involving different

12    inquiries than those at issue here. *Id.* ¶¶ 124–150.  Whereas antitrust law seeks to protect

13    ***consumers*** from prices that are ***too high***, trade law generally protects domestic ***producers*** from

14    prices that are ***too low***.  Plaintiff tacitly seems to acknowledge the distinction between its own

15    antitrust action and these antidumping actions, using phrases like Defendants sold at "less than a

16    fair price" (*id.* ¶ 132); "Defendants . . . sold their panels . . . for up to 31% more [in China] than

17    the price at which they [sold] those panels in the United States market" (*id.* ¶ 134); and

18    Defendants' "products were sold at lower prices than the comparable domestic product in 18 of 19

19    quarterly comparisons" (*id.* ¶ 142).  After relying on the trade cases for many of the allegations in

20    the Complaint, moreover, Plaintiff never even alleges that these investigations found that

21    Defendants sold their photovoltaic panels below marginal cost in the United States.

22    Finally, Plaintiff does not suggest that any defendant has recouped its supposed losses to

23    date or provide any explanation as to how Defendants could recoup in the future.  *Id.* ¶¶ 218–227;

24    ¶¶ 40, 183 (decrying Defendants' "complete domination of the United States market," while only

25    alleging a combined market share of 52 percent).  Nor does Plaintiff even explain to what measure

26    of "cost" it refers when it alleges below-cost sales.  *See, e.g., id.* ¶¶ 105, 165, 166.

27

28

**LEGAL STANDARD**

To overcome a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint must allege facts sufficient to make its claim "plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) ("[C]laimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition."). While the court is obliged, when considering a motion to dismiss, to accept "all well-pleaded factual allegations as true," *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007) (quoting *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000)), "conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss." *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 957 (N.D. Cal. 2007) (Armstrong, J.).

**ARGUMENT**

**I.      Solyndra Fails to Allege a Plausible Conspiracy Under Section 1 of the Sherman Act**

**A.      The Complaint Does Not Allege Basic Facts Suggesting an Agreement**

Solyndra's allegations of conspiracy do not meet the basic "plausibility" requirement, as set out above, because the Complaint does not allege ***facts*** showing any express agreement among Defendants regarding pricing. The closest Solyndra comes to alleging any express agreement is its allegations that, at the December 2007, November 2008, and January 2010 China New Energy International Forums, "[u]pon information and belief, leaders from Suntech, Trina, and Yingli met at th[ese] Forum[s], discussed prices, and agreed to lower prices uniformly," and that, "[f]ollowing [each] meeting, solar panel prices for each of the Defendants fell" "approximately 40%," "another 18%," and "an additional 20%," respectively. Compl. ¶¶ 92, 94, 96.[2]

---

[2] Solyndra also fails to provide any details regarding whether the alleged price drops were precipitous or gradual, steady or intermittent, or whether the price drops for Suntech, Trina, and Yingli happened concurrently or at different times. Compl. ¶¶ 92, 94, 96. Indeed, it is not even clear from Solyndra's allegations during what time period the 40%, 18%, and 20% price drops supposedly occurred, rendering these percentages meaningless. *See id.*

But these allegations are "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50–51 (2d Cir. 2007).  Solyndra merely combines publicly-available information regarding the date of an annual industry meeting with conclusory allegations—based only on unspecified "information and belief"[3]—that unnamed "leaders" agreed to lower prices "uniformly."  Compl. ¶ 92.  *Twombly* demands more:  "In *Twombly*, the Supreme Court dismissed as insufficient similar 'stray statements' about agreements, when unsupported by ***concrete*** allegations about the ***content and circumstances*** of any actual agreement."  *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (Armstrong, J.) (citing *Twombly*, 550 U.S. at 564) (emphasis added)).

Unable to plead the facts needed to allege an express agreement, Solyndra instead explicitly relies on inferences from parallel conduct, complaining that "[t]he timing and remarkable similarity of Defendants' pricing behavior completely belies any claim of independent action."  Compl. ¶ 77.  Solyndra states that Defendants "began dumping products in the United States market ***at the exact same time*** and in markedly parallel form."  *Id.* ¶ 77–78 (emphasis in original).

But "[a]s the *Twombly* Court noted, parallel behavior in a concentrated market is insufficient to suggest a conspiracy because it is a 'common reaction of firms in a concentrated market' to 'recogniz[e] their shared economic interests' and to reach similar 'price and output decisions' independently."  *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964 (citing *Twombly*, 550 U.S. at 553); *see also In re Elevator Antitrust Litig.*, 502 F.3d at 51–52 (affirming dismissal of Section 1 claim because "similar pricing can suggest competition at least as plausibly as it can suggest anticompetitive conspiracy"); *Mayor and City Council of Baltimore, Maryland v. Citigroup, Inc.*, Case No. 10-0722-cv (L), at 14 (2d Cir. Mar. 5, 2013) ("[A] bare allegation of parallel conduct is not enough to survive a motion to dismiss.").

---

[3] Solyndra elsewhere admits that unspecified "information and belief" underpins its allegations of agreement among Defendants.  Compl. ¶¶ 1, 88.  The rejected allegations in *Twombly* likewise rested on "information and belief."  *See Twombly*, 550 U.S. at 551.

1      Solyndra's Complaint does nothing to place the allegations "in a context that raises a

2   suggestion of a preceding agreement, not merely parallel conduct that could just as well be

3   independent action."  *Twombly*, 550 U.S. at 557; *see also In re Late Fee and Over-Limit Fee*

4   *Litig.*, 528 F. Supp. 2d at 963.  Solyndra claims no more than that Defendants had "additional

5   ***opportunities*** to coordinate" through meetings, socializing, and even the innocuous fact that two

6   defendants share the same address for incorporation in the Cayman Islands.  Compl. ¶ 97–99

7   (emphasis added).  But this Court has explained in no uncertain terms that mere "opportunities . . .

8   to communicate and agree to fix prices" are insufficient:  "The Supreme Court rejected similar

9   allegations in *Twombly*, and other courts have consistently refused to infer the existence of a

10   conspiracy from these kinds of averments."  *See In re Late Fee and Over-Limit Fee Litig.*, 528 F.

11   Supp. 2d at 963–64 (citations omitted) (citing cases).

12      Indeed, Solyndra's allegations are rendered even more implausible by the large number of

13   players alleged to have been involved.  "Even at the dismissal stage, Plaintiff[] must aver

14   sufficient facts to make the existence of the pleaded conspiracy among so great a number of

15   alleged co-conspirators plausible."  *In re Ins. Brokerage Antitrust Litig.*, Nos. 04–5184, 05–1079,

16   2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006) (citation omitted).  Solyndra provides no motive

17   whatsoever for the supposed co-conspirators to assent to a conspiracy to ***reduce*** prices that

18   provides them no reward.  For example, the Complaint alleges that the China Development Bank,

19   the Export-Import Bank of China, and the Bank of China all participated by providing below-cost

20   financing.  Compl. ¶¶ 109–18.  Solyndra asserts that such loans "have no legitimate business

21   purpose" (*id.* ¶ 23), but provides no explanation as to why any bank, let alone multiple banks,

22   would submit to such unfavorable terms.  The Complaint also alleges that suppliers such as GCL-

23   Poly Energy Holdings Limited, Jiangsu Shunda, and Daqo New Energy Corp. participated by

24   providing below-cost inputs.  *Id.* ¶¶ 119–22.  But again, the Complaint provides no reason why

25   these actors would participate in a scheme requiring them to provide Defendants with "billions of

26   dollars in . . . loans [and] discounts on polysilicon."  *Id.* ¶ 182.  There simply are no facts

27   supporting Solyndra's conspiracy claims—to ***lower*** prices—and manifest reasons to doubt them.

28   Because Plaintiff fails to allege a plausible conspiracy, its Complaint should be dismissed.

Finally, Plaintiff's Complaint itself provides a far more plausible explanation for any price decrease than the purported conspiracy it alleges.  On a motion to dismiss, Solyndra's allegations must be viewed "in light of basic economic principles."  *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009).  Through that prism, Solyndra's allegations are wholly implausible.  "[A]s in *Twombly*, the complaint itself provides an alternative explanation for the [change in prices], namely that they were the result of a 'rational and competitive business strategy unilaterally prompted by common perceptions of the market.'"  *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d at 962–63 (citing *Twombly*, 550 U.S. at 554).

Solyndra simply ignores its own allegations showing that, at or near the very same time that Defendants were lowering prices, the solar panel industry was becoming dramatically more competitive.  The industry experienced a steady wave of new entrants (including Solyndra) supported by government subsidies and induced by "more than $200 billion of financial opportunity . . . almost all of which is untapped."  Compl. ¶ 29.  Solyndra acknowledges that "the United States has various initiatives for encouraging the solar industry" (*id.* ¶ 140) and that, "after a lengthy loan application process, the federal government lent Solyndra $535 million."  *Id.* ¶ 70.  The new entrants increased supply and drove down prices.  *See id.* ¶¶ 82–84.

But because supply was increasing even faster than projected demand, industry analysts predicted a price decline (*id.* ¶¶ 82, 101–102), as, apparently, did Solyndra itself.  *See id.* ¶¶ 194, 200, 209.  As Solyndra concedes, fifteen of sixteen domestic producers have also reduced their prices since January 2008 "in order to compete."  *Id.* ¶ 143.  So while Solyndra attempts to imply that a simultaneous rise in demand and decrease in price is somehow inherently suspicious (*id.* ¶ 81 ("Defendants also acted contrary to rational economic rules . . . . [A] rational actor in the market will increase prices when demand is increasing in order to maximize his profits")), in fact, these market conditions were wholly anticipated.  Not surprisingly, as solar power grew more affordable, it became a more viable electricity alternative, which in turn spurred increases in demand.  *Id.* ¶¶ 41, 82–84.

Thus, there is an "obvious alternative explanation" for the market conditions underpinning Solyndra's conspiracy claims.  *Twombly*, 550 U.S. at 567.

**B.     Plaintiff's Recast Allegations Still Utterly Fail to Meet the Requirements for a Predatory Pricing Claim**

Even if Plaintiff had alleged facts plausibly suggesting a conspiracy, however, its claim would still fall short because it has utterly failed to meet the requirements for a predatory pricing claim.  By alleging that Defendants conspired to *lower* prices, Plaintiff is attempting to shoehorn a predatory pricing claim into its Section 1 count.  Thus, Plaintiff must not only allege sufficient facts to show that (1) a conspiracy was plausible, but also that (2) Defendants intended to and did act predatorily.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990) (holding that "nonpredatory price competition for increased market share, as reflected by prices that are below 'market price' or even below the costs of a firm's rivals," is not forbidden by the antitrust laws).  As described above, Plaintiff has failed to meet the first requirement, and the Complaint should be dismissed on that basis alone.  But Plaintiff also fails to meet the second requirement—that Defendants intended to and did act predatorily—providing a second and independent basis on which the Court should dismiss the Complaint.

Indeed, the limited revisions to Solyndra's initial Complaint reveal that Solyndra itself recognized its inability to plead successfully that Defendants priced predatorily.  In its original Complaint, Solyndra titled Count I "Conspiracy and Combination to Fix Prices *at Predatory Levels*."  Orig. Compl., Oct. 11, 2012, ECF No.1 at 42:16–17 (emphasis added).  In its amended Complaint, Solyndra merely removed the phrase "at Predatory Levels."  Compl. at 46:24–25.  Unfortunately for Solyndra, its predatory pricing allegations are no more plausible as a part of its Section 1 claim than they were as a stand-alone predatory pricing claim.

The Supreme Court has recognized that predatory pricing claims (or substantively identical conspiracy claims based on an alleged agreement to reduce prices) are inherently suspect, particularly those that require conspiratorial conduct.  *Pac. Bell Tele. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 451 (2009).  To state a predatory pricing or equivalent claim, a plaintiff must plausibly allege that (1) "the prices complained of are below an appropriate measure of its rival's costs," and (2) "the competitor had . . . a *dangerous probability*[] of recouping its investment in below-cost prices."  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222–

1    24 (1993) (emphasis added).  Without a plausible allegation of recoupment, "predatory pricing

2    produces lower aggregate pric[es] in the market, and consumer welfare is enhanced."  *Id.* at 224.

3    And, when a conspiracy to engage in predatory pricing is alleged, the conspiracy "is incalculably

4    more difficult to execute" because, during the recoupment phase, "each conspirator has a strong

5    incentive to cheat."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 590 (1986).

6              1.    Plaintiff's Allegations Do Not Suggest a Likelihood of Recoupment

7              Solyndra's redrafted predatory pricing claims fail because it still has not pled—and cannot

8    plead—any likelihood of recoupment.  Indeed, the Complaint **concedes** that the Defendants have

9    yet to recoup any costs or losses through increased prices. [4]  This is true despite allegations that

10   Solyndra and eight other U.S. solar panel manufacturers have filed for bankruptcy protection or

11   shut down manufacturing in the last few years.  Compl. ¶ 155.  Solyndra's concession that prices

12   have yet to rise **despite** these exits from the market lays bare the implausibility of its allegations;

13   the most reasonable inference is that prices declined because of healthy market competition and

14   industry-wide cost reductions.  *See Matsushita*, 475 U.S. at 590–91 (the fact that the alleged

15   predators had not yet achieved monopolization years after the scheme began undermined

16   plaintiffs' claim); *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1063

17   (N.D. Cal. 1998) ("[W]ithout market power, the predator's recoupment will be thwarted by

18   competitors who will offer their services at prices below the predator's supra-competitive

19   prices."); *see also Creative Copier Serv. v. Xerox Corp.*, 344 F. Supp. 2d 858, 867 (D. Conn.

20   2004) ("vague . . . allegations that Xerox hoped to have a monopoly in the service market" were

21   insufficient to survive a motion to dismiss).

22             Unable to allege current recoupment, Solyndra instead relies entirely on a naked assertion

23   of **future** potential recoupment.  Compl. ¶ 183 (alleging that Defendants "**will** be able [not have

24   been able] to charge prices for solar panels that are ultimately higher") (emphasis added).  In other

25   words, Solyndra acknowledges that a predatory pricing violation has not yet occurred, but

26   _____

27   [4] In one paragraph of the Complaint, Solyndra alleges that Suntech's total net revenue increased from 2009 to 2011, but increased revenue says nothing about increased prices or profits.  Compl. ¶173.  Solyndra also cites an article that references increased sales volume.  Compl. ¶173.  Again, however, it says nothing about increased prices or profits. *Id.*

28

1    suggests it may occur at some undefined point in the future.  But the Complaint also alleges that

2    the solar panel market is becoming more, not less, competitive.  Factors like customer preference

3    for ease-of-installation and ease-of-maintenance (*id.* ¶ 36) have led to commoditization and

4    increased competition in the solar panel market, which makes it more difficult for premium price

5    companies like Solyndra to survive.  *Id.* ¶ 67.  Indeed, the price competition alleged in the

6    Complaint is exactly what is expected in such a market.  *Id.* ¶ 77.  Given the competitive nature of

7    the market and Solyndra's contradictory claim that Defendants have "little interest" in raising

8    prices or recouping their alleged losses, Solyndra's allegations themselves show that there is no

9    likelihood of future recoupment.  *Id.* ¶ 181.[5]

10   Finally, Solyndra's failure to plead any likelihood of recoupment also dooms its Complaint

11   for the independent reason that it makes the alleged conspiracy wholly implausible.  Without the

12   ability to recoup their losses, the "low-price" conspiracy that Solyndra alleges would be entirely

13   irrational.  Faced with such a competitive industry, it is impossible to fathom a scenario in which

14   Defendants could plausibly recoup, much less have any "dangerous probability" of recouping,

15   their alleged losses.  Without recoupment, it is likewise impossible to fathom a scenario in which

16   Defendants would have the motive to conspire to lower prices as alleged in the Complaint.

17              2.    Plaintiff Has Failed to Plead Pricing Below Marginal Cost

18   Plaintiff's recast predatory pricing claim also falls short for the separate reason that

19   Solyndra does not even ***attempt*** to plead below-marginal cost pricing.  Courts in this Circuit have

20   indicated that it is not merely "below-cost" pricing, but pricing below the "incremental cost of

21   production" (*i.e.*, marginal cost) that is the appropriate measure by which to determine whether a

22   party has engaged in predatory pricing.  *See, e.g.*, *Church & Dwight Co., Inc. v. Mayer Labs*, No.

23   C–10–4429 EMC, 2011 WL 1225912, at *9 (N.D. Cal. Apr. 1, 2011) (observing that Plaintiff had

24

25   [5] Solyndra acknowledges that Defendants have only a 52% share in the overall market and fails to include the
company that it alleges to be the market leader—First Solar—in the alleged conspiracy.  Compl. ¶ 40.  The Complaint
26   makes no effort to explain how Defendants could raise prices sufficiently to recoup losses with only 52% market share
and without the participation of such a market leader.  *See Multistate Legal Studies, Inc. v. Harcourt Brach
27   Jovanovich Legal & Prof. Publ'ns, Inc.*, 63 F.3d 1540, 1554 (10th Cir. 1995) (listing "number and strength of other
competitors" as a factor in determining probability of a successful predatory pricing scheme); *In re Late Fee and
Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964 (expressing doubt that 70% market share was sufficient to "render the
28   asserted conspiracy plausible" and observing that in *Twombly*, the Court declined to find a 90% market share
sufficient to state a claim).

1   declined to file a predatory pricing claim) (citing *Cascade Health Solutions v. PeaceHealth*, 515

2   F.3d 883, 906 (9th Cir. 2008)).  But the Complaint consistently relies on vague, unsupported

3   references to "below-cost" pricing, with no effort to explain what that allegation means.  *See, e.g.*,

4   Compl. ¶¶ 105, 165, 166.  Those allegations therefore fail to meet the standard suggested by the

5   9th Circuit for predatory pricing claims.  *See, e.g.*, *Cascade*, 515 F.3d at 906; *Church*, 2011 WL

6   1225912, at *9.  Plaintiff does not even make a bald, unsupported claim of pricing below marginal

7   cost, instead ignoring it entirely, and its claims should be dismissed for this reason as well.

8
            **C.      Solyndra's Reliance on the Unrelated DOC and ITC Investigations Does Not
9                     Help Its Claims**

10          Unable to craft a plausible claim for predatory pricing, Plaintiff once again attempts to

11  cover up the implausibility of its price-fixing allegations by relying on the recent DOC and ITC

12  findings that Defendants sold products for "less than fair value."  Compl. ¶ 6.  But the DOC and

13  ITC determinations differ significantly from the metric required by the antitrust laws.  *See* Harvey

14  M. Applebaum, *The Interface of the Trade Laws and the Antitrust Laws*, 6 Geo. Mason L. Rev.

15  479, 482–85 (1998) (noting that, in the typical DOC antidumping case, "there is no requirement

16  that the sales in the United States are below cost.  Accordingly, there can be dumping (sales below

17  normal value) ***even if the sales in both markets are profitable***") (emphasis added).  Because the

18  DOC and ITC can impose duties on profitable, pro-competitive, consumer-enhancing behavior,

19  relying on findings by those entities to support a Section 1 claim is illogical and improper.

20          Indeed, if Solyndra is, in fact, trying to assert a private "dumping" action based on the U.S.

21  antidumping laws (*see, e.g.*, Compl. ¶¶ 124–151, 173), Plaintiff's claim is not only improper, but

22  preempted by the federal trade laws, and should be dismissed on this basis as well.  As part of an

23  elaborate and pervasive regulatory scheme,[6] the Tariff Act of 1930 provides that the Department

24  of Commerce may initiate an investigation, on its own initiative or by private petition, if reason

25
    _____

26  [6] Key parts include the Tariff Act of 1930 (19 U.S.C. §§ 1202–1683g); the Trade Act of 1974 (19 U.S.C. §§ 2101–
    2497b); the North American Free Trade Agreement (19 U.S.C. §§ 3301–3473); the General Agreement on Tariffs and
27  Trade (GATT) (19 U.S.C. §§ 3511–3556), the World Trade Organization (WTO) Agreement (19 U.S.C. § 3511), and
    a wide variety of bilateral, product-specific, and other specialized agreements.  *See* Office of the United States Trade
28  Representative, *Trade Laws*, http://www.ustr.gov/about-us/trade-toolbox/trade-laws (last visited Nov. 12, 2012).

exists to believe that an industry in the United States is "materially injured" or "threatened with material injury" by "foreign merchandise [being] . . . sold in the United States at less than its fair value." 19 U.S.C. § 1673(1)–(2). This is the **only** remedy available to private plaintiffs under the trade laws and treaties of the United States, as reflected in a 2000 decision by the Dispute Settlement Body of the WTO against the United States in Panel Report, United States–Anti-Dumping Act of 1916, WT/DS136/R (Mar. 31, 2000) and the subsequent repeal of the U.S.'s Antidumping Act of 1916 (the "1916 Act"), 15 U.S.C. § 72 (creating, among other things, a private right of action for treble-damages antidumping suits (repealed by Pub. L. 108-429, Dec. 3, 2004)).

In that decision, the WTO found that the 1916 Act, by creating a private antidumping cause-of-action, directly conflicted with U.S. obligations under GATT and WTO agreements. Panel Report, United States–Anti-Dumping Act of 1916, WT/DS136/R (Mar. 31, 2000). In repealing the 1916 Act, Congress was therefore careful to point out that the repeal did "not disturb other existing antidumping remedies in **U.S. trade law**" (emphasis added) and that, "[a]s a result, U.S. industry may continue to utilize the comprehensive and internationally-compliant antidumping remedies enacted by the United States." REPEAL OF SECTION 801 OF THE REVENUE ACT OF 1916, H.R. REP. NO. 108-415, at 2 (2004). To the extent that it asserts nothing more than "dumping," Plaintiff's remedies thus fall within the exclusive jurisdiction of the DOC and ITC and are outside the scope of U.S. antitrust law.

Moreover, even if these investigations were relevant to pleading an antitrust claim under the Sherman Act, Solyndra's reliance on the DOC and ITC investigations actually **undermine**s its claims.[7] Solyndra alleges that Defendants received "massive" subsidies,[8] including the ability to purchase inputs at below-market prices. Compl. ¶ 136. But those alleged subsidies must be included in any analysis of whether Defendants' prices were below costs. *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 867 F. Supp. 925, 939–40 (D. Or. 1994) (finding that a comparison

---

[7] Defendants of course dispute the findings of Commerce and the ITC. Defendants have appealed those decisions.

[8] As noted above, Solyndra itself received $535 million from the United States government. Compl. ¶ 70.

1  of defendant's prices to its costs "absent the subsidy" "would be meaningless"); *William Inglis &*

2  *Sons Baking Co. v. ITT Cont. Baking Co., Inc.*, 668 F.2d 1014, 1031 (9th Cir. 1981) ("Pricing is

3  predatory only where the firm foregoes short-term profits in order to develop a market position

4  such that the firm can later raise prices and recoup lost profits.") (quoting *Janich Bros. Inc. v. Am.*

5  *Distilling Co.*, 570 F.2d 848, 856 (9th Cir. 1977)).  Put differently, these alleged subsidies tend to

6  *lower* Defendants' costs and thus make them more cost-competitive.  Indeed, having itself received

7  $535 million in favorable loans from the federal government (*Id.* ¶ 70), Solyndra is in no position

8  to imply something nefarious or unlawful about receiving subsidization in a growth industry.

9      In sum, because Solyndra cannot allege that Defendants did anything other than compete

10  on their merits, this case presents the perfect opportunity to heed *Matsushita*'s warning that, "[i]n

11  cases seeking to impose antitrust liability for prices that are too low, mistaken inferences are

12  'especially costly, because they chill the very conduct the antitrust laws are designed to protect.'"

13  *Linkline Commc'ns,* 555 U.S. at 451 (citing *Matsushita*, 475 U.S. at 594).  The Complaint should

14  be dismissed.

15  **II.     Solyndra Has Not Suffered Any Antitrust Injury and Therefore Lacks Standing to
16          Sue Under the Sherman Act**

17      As set out above, Solyndra has not come close to alleging facts sufficient to make its

18  claims—that defendants engaged in a conspiracy to *lower* prices—plausible, let alone likely.

19  Without a viable allegation of predatory conduct and harm to competition, Solyndra also lacks

20  standing to bring a federal antitrust claim.

21      To have standing to sue under the Sherman Act, Solyndra must adequately plead that it has

22  suffered antitrust injury from harm to competition.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,

23  429 U.S. 477, 489 (1977); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)

24  (standing only exists if harm to the plaintiff "stems from a competition-reducing aspect or effect of

25  the defendant's behavior").  Solyndra has failed this test.  It alleges that it suffered injury because

26  Defendants charged prices that were too low for it to meet or beat.  But a competitor suffers no

27  antitrust injury from a rival's lower prices unless the defendant's conduct qualifies as "predatory

28  pricing."  *See, e.g.*, *USA Petroleum*, 495 U.S. at 339 ("Although a . . . maximum-price-fixing

1    arrangement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust

2    injury unless it results in predatory pricing"). And "[p]redatory pricing is only harmful when the

3    predator succeeds in recouping the losses it suffered by its earlier below-cost pricing." *W. Parcel*

4    *Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1063 (N.D. Cal. 1998) .

5            In the absence of predatory conduct, Solyndra has no basis to sue. The fact that Solyndra

6    could not compete on price and might have gone out of business because of that disadvantage is

7    not an antitrust issue. Indeed, the Complaint acknowledges that Defendants reported "positive

8    gross margins in their earnings reports" (Compl. ¶ 168), and that such positive margins are "due to

9    subsidized manufacturing equipment and raw materials." *Id.* ¶ 170.[9] These allegations doom

10   Solyndra's claim. Profitable price cuts, plain and simple, benefit consumers. *Cal. Comp. Prods.,*

11   *Inc v. IBM*, 613 F.2d 727, 742, 745 (9th Cir. 1979). The Supreme Court has held that low prices

12   above an alleged predator's costs simply reflect "the lower cost structure of the alleged predator,

13   and so ***represents competition on the merits***." *Cascade Health Solutions v. PeaceHealth,* 515

14   F.3d 883, 901 (9th Cir. 2008) (emphasis added); *see also Brooke Grp.*, 509 U.S. at 223.[10]

15           This is the law because low prices are pro-consumer and pro-competitive. Punishing

16   competitors who offer low prices to consumers is antithetical to the antitrust laws. *See USA*

17   *Petroleum*, 495 U.S. at 340 ("Low prices benefit consumers regardless of how those prices are set,

18   and so long as they are above predatory levels, they do not threaten competition [and] . . . cannot

19   give rise to antitrust injury."); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986)

20   ("To hold that the antitrust laws protect competitors from the loss of profits due to such price

21   competition would, in effect, render illegal any decision by a firm to cut prices in order to increase

22   market share. The antitrust laws require no such perverse result[.]").

23

24   ───────────────────

25   [9] Solyndra erroneously describes the subsidies as "illegal." Compl. ¶ 136. But even an "illegal" subsidy that harms
     Plaintiff neither supports allegations of a conspiracy nor creates an "antitrust injury" that gives rise to a Sherman Act
26   claim. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338–40 (1990); *Glen Holly Entmt, Inc. v.
     Tektronix, Inc.*, 343 F.3d 1000, 1007–08 (9th Cir. 2003).

27   [10] Similarly, without allegations of below-cost pricing, predatory pricing does not violate the antitrust laws, because
     prices above an "appropriate measure" of Defendants' cost—even low prices—"do not threaten competition." *Brooke*
28   *Grp.*, 509 U.S. at 222–23. "Low prices benefit consumers regardless of how those prices are set." *Id.* at 223.

1    Consequently, Solyndra has not suffered antitrust injury and lacks standing to sue.  The

2    Sherman Act claim should be dismissed for this separate reason as well.  *See, e.g.*, *Assoc. Gen.*

3    *Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 540 (1983) (affirming

4    dismissal for failure to plead that plaintiff's harm was "of the type that the antitrust statute was

5    intended to forestall"); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. Appx. 554, 557 (9th Cir.

6    2008) (upholding dismissal for failure to plead "harm to the process of competition and consumer

7    welfare" as distinct from "harm to individual competitors"); *McGlinchy v. Shell Chem. Co.*, 845

8    F.2d 802, 815 (9th Cir. 1988) (affirming judgment on the pleadings for lack of standing based on

9    failure to plead "injury to the market or to competition in general").[11]

10   **III.    Solyndra Has Failed to Plead an Adequate Product or Geographic Market**

11           Solyndra's claims also fail for the third independent reason that it does not identify any

12   viable market for its antitrust claims.  "[T]o state an antitrust claim, a plaintiff must identify a

13   relevant market within which the defendant has market power." *See, e.g.*, *Golden Gate Pharm.*

14   *Servs., Inc. v. Pfizer, Inc.*, No. 10-15978, 2011 WL 1898150, at *1 (9th Cir. May 19, 2011).  A

15   viable relevant market is determined by reference to a "product market" and a "geographic

16   market." *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962).  A complaint that fails

17   adequately to plead the relevant market is subject to dismissal.  *Newcal Indus., Inc. v. Ikon Office*

18   *Solutions*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008).

19           **A.    Plaintiff Has Failed to Plead an Adequate Product Market**

20           Solyndra's cursory and narrow product market allegation falls far short of identifying a

21   viable market.  Solyndra alleges that the "relevant product market consists of the market for the

22   sales or marketing of commercial and industrial rooftop solar photovoltaic panels to commercial

23   and industrial rooftop solar photovoltaic panel production plants (*i.e.* sell-side), and the market for

24   the purchase of commercial and industrial rooftop solar photovoltaic panels (*i.e.*, buy-side)."

25   Compl. ¶ 35; *see also* ¶ 25.  This allegation is striking because it excludes among other sectors of

26   the market, the residential and utility sectors, and seeks to narrow the alleged market—without any

27   _____

28   [11] Plaintiff also lacks standing to the extent that it alleges no more than "dumping" as defined by U.S. trade laws, as set out above.  *See supra*, Part I.C.

factual justification whatsoever—to Solyndra's own products. *See, e.g., id.* ¶ 13 (describing Solyndra's products as targeted for commercial and rooftop applications).  But an antitrust plaintiff cannot merely define the market by referring to its own products.  Instead, a product market must be "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe*, 370 U.S. at 325.  A key "legal principle[] that govern[s] the definition of an antitrust 'relevant market'" is that "the market must encompass the product at issue as well as all economic substitutes for the product." *Newcal*, 513 F.3d at 1045.  Courts correctly dismiss complaints where, as here, the plaintiff fails to make allegations to explain the exclusion of potential substitutes for the product. *See, e.g., Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999).[12]

Solyndra makes no effort to meet these pleading requirements.  Solyndra offers no factual allegations justifying the restriction of the alleged product market to roof-top solar panels used in commercial and industrial settings, nor does Solyndra make factual allegations that would support excluding any alternative method of generating electricity for residential and utility customers from its market definition.[13]  Indeed, the Complaint itself acknowledges numerous methods of generating electricity used as alternatives to solar panels, yet offers no explanation for why any of them should be excluded from its proposed market. *See, e.g.*, Compl. ¶¶ 27, 41, 100.  The only apparent explanation for Plaintiff's gerrymandered product market is to allege that Defendants have a 52% share in Plaintiff's defined overall market.  But Plaintiff's desire to increase the overall combined share is not a substitute for adequately pleading the requisite product market.  Where, as here, obvious (and admitted) potential substitutes for the product are excluded from a plaintiff's proposed market definition without explanation, the plaintiff has failed to plead a

---

[12] *See also Malaney v. UAL Corp.*, No. 10-17208, 2011 WL 1979870, at *1 (9th Cir. May 23, 2011) ("To meet this standard, products do not have to be perfectly fungible, but must be sufficiently interchangeable that a potential price increase in one product would be defeated by the threat of a sufficient number of customers switching to the alternate product.") (citing *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 394 (1956)); *United States v. Cont'l Can Co.*, 378 U.S. 441, 449 (1964)).

[13] *Cf. United States v. Gen. Dynamics Corp.*, 341 F. Supp. 534, 555 (N.D. Ill. 1972) (finding that the "energy market" generally was the relevant market in determining whether merger between two coal companies was anticompetitive, in light of the "intense level of interfuel competition" and because "purchasing decisions with respect to coal were based primarily upon a comparison of competitive forms of energy").

1    plausible relevant market, and the complaint should be dismissed.  *See, e.g.*, *Big Bear Lodging*

2    *Ass'n*, 182 F.3d at 1105 (complaint insufficient where it failed to plead that "there are no other

3    goods or services . . . reasonably interchangeable with [the product]").

### B.      Plaintiff Has Failed to Plead an Adequate Geographic Market

5          Plaintiff's Sherman Act claim should also be dismissed because Solyndra fails adequately

6    to plead the geographic scope of its market.  *See, e.g.*, *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,

7    300 F.3d 620, 633 (5th Cir. 2002) (affirming dismissal of antitrust complaint after finding

8    plaintiff's "geographic market definition insufficient as a matter of law").  Plaintiff's identification

9    of "the United States" as the relevant geographic market (Compl. ¶ 25) is not only unsupported by

10   adequate factual allegations, but is affirmatively disproven by other allegations in the Complaint.

11         The "geographic market analysis defines the region 'in which the seller operates, and to

12   which the purchaser can practicably turn for suppliers.'"  *F.T.C. v. Lab. Corp. of Am.*, No. SACV

13   10–1873 AG (MLGx), 2011 WL 3100372, at *19 (C.D. Cal. Mar. 11, 2011) (quoting *Tampa Elec.*

14   *Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)).  The facts alleged in the Complaint indicate

15   that the relevant geographic market is global, and that customers can practicably turn to alternative

16   suppliers across the entire world.  Specifically, Plaintiff contends that the Defendants are based in

17   China (Compl. ¶¶ 14, 16, 18); admits that "European companies" supply the same products

18   (*id.* ¶ 80); and alleges that it made sales globally.  It supports its allegations by claiming

19   Defendants should have sold more of the identical products abroad relative to the United States.

20   *See, e.g.*, *id.* ¶ 199 (alleging Plaintiff made sales to GeckoLogic GmbH, "based in Wetzlar,

21   Germany" that "installed over 1,400 solar PV systems around the world"); *id.* ¶ 208 (alleging

22   Plaintiff made sales to Umwelt Sonne Energie GmbH, "based in Holzgerligen, Germany" that

23   "builds, and services large scale solar PV systems across the European Union").  These allegations

24   reflect the reality that suppliers and customers of solar panels operate on a global basis; national

25   barriers are not an impediment or defining market feature.

26         Consequently, Plaintiff's attempt to limit the geographic market to "the United States" is

27   untenable.  *See E .I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 444 (4th

28   Cir. 2011) (noting dismissal is appropriate where a complaint "defines a geographic market in an

1   unreasonably and implausibly narrow manner") (quoting *Allen v. Dairy Farmers of Am., Inc.*, 748

2   F. Supp. 2d 323, 339 (D. Vt. 2010)).

3   **IV.   Solyndra's State Law Claims Should Be Dismissed**

4       **A.    Plaintiff's Claims Under the Cartwright Act and for Interference With
5              Prospective Economic Advantage Fall With Its Sherman Act Claim**

6       Solyndra's claims under the California Cartwright Act and for interference with

7   prospective economic advantage fail for the same reasons as its Sherman Act claim.  Because the

8   "Cartwright Act was patterned after Section 1 of the Sherman Act, and the pleading requirements

9   under the two statutes are similar," *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203 (N.D.

10  Cal. 2008), Plaintiff's Cartwright Act claim fails as a matter of law.  *See, e.g.*, *Nova Designs, Inc.

11  v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) (noting that "disposition of

12  [plaintiff's] Sherman Act claims disposes of its claims under the California Cartwright Act "); *In

13  re Late Fee and Over-Limit Litig.*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (noting that the

14  "analysis under California's antitrust law mirrors the analysis under federal law").

15      Similarly, Solyndra's failure to plead a cognizable Sherman Act claim dooms its cause of

16  action for interference with prospective economic advantage.  Among other elements, "a plaintiff

17  seeking to recover for an alleged interference with prospective contractual or economic relations

18  must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered

19  with the plaintiff's expectancy, but engaged in conduct that was ***wrongful by some legal measure

20  other than the fact of interference itself***."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902

21  P.2d 740, 750 (Cal. 1995) (emphasis added); *see also Silicon Knights v. Crystal Dynamics*, 983 F.

22  Supp. 1303, 1311 (N.D. Cal. 1997).[14]  Here, as set out above, the sole basis for Solyndra's

23  interference claim is that Defendants allegedly sold panels at low prices that Solyndra could not

24  match.  *See* Compl. ¶¶ 190–91, 197, 204, 211, 214.  These alleged acts, which are not prohibited

25  in any way under the antitrust laws for the reasons discussed above, cannot constitute the requisite

[14] The other elements are:  "(1) the existence of a specific economic relationship between plaintiff and third parties that may economically benefit plaintiff; (2) knowledge by the defendants of this relationship; (3) intentional acts by the defendants designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff."  *Silicon Knights,* 983 F. Supp. at 1311 (internal punctuation and citations omitted).

wrongful act for purposes of an interference with economic advantage claim.  To the contrary, lowering prices enjoys the privilege of competition that bars any interference claim.  *See S.F. Design Ctr. Assocs. v. Portman Cos.*, 50 Cal. Rptr. 2d 716, 723 (Ct. App. 1995) (quotations omitted), *dismissed, remanded, and ordered published*, 911 P.2d 1373 (Cal. 1996) ("It is no tort to beat a business rival to prospective customers.  Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates . . . all without incurring liability . . . . We conclude that the privilege of competition constitutes a valid affirmative defense to a cause of action for intentional interference with prospective economic advantage.").

**B.  The Court Should Decline Jurisdiction Over the Remaining State Law Claims or Dismiss Them on the Merits**

**1.  The Court Should Decline to Exercise Supplemental Jurisdiction**

Because Solyndra has failed to state a cognizable federal antitrust claim, this Court should decline to exercise supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367(c)(3).  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Hoeck v. City of Portland*, 57 F.3d 781, 785 (9th Cir. 1995) (holding that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law").  Even if the Court decides to reach these claims, however, each of them fails to plead the requisite elements under California law.

**2.  The Complaint Fails to State a Claim Under California's Unfair Practices Act Because It Fails Adequately to Allege Specific Intent to Injure Competition or Competitors**

Solyndra's attempt to allege a claim under the California Unfair Practices Act ("UPA") is misguided.[15]  The UPA prohibits the ***purposeful*** injury to, or destruction of, competition or

---

[15] Defendants note as an initial matter that the UPA was never intended to address a situation, such as the one here, of large technology companies competing in new markets.  Instead, the UPA's "primary concern" was "the protection of smaller, independent retailers, especially grocers, against unfair competitive practices of the large chain stores."  *Bay Guardian Co. v. New Times Media LLC*, 114 Cal. Rptr. 3d 392, 406 (Ct. App. 2010).  This is hardly applicable to Solyndra (with hundreds of millions of dollars in sales and government subsidies) and its claims here.

competitors through below-cost sales or the use of a "loss leader" product.  Cal. Bus. & Prof. Code § 17043 ("It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition."); *id*. § 17044 ("It is unlawful for any person engaged in business within this State to sell or use any article or product as a 'loss leader'[ ]").[16]  To come within either statute, a defendant is required not only to have injured competition or competitors, but also to have acted with "the purpose, *i.e.*, the desire, of injuring competitors or destroying competition."  *Bay Guardian Co. v. New Times Media LLC*, 114 Cal. Rptr. 3d 392, 405 (Ct. App. 2010); *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 535–36 (Cal. 1999) (analyzing high standard of "purpose" mental state).  Courts interpret this requirement as being an "especially stringent one."  *Bay Guardian*, 114 Cal. Rptr. 3d at 405.  Where a complaint fails to allege facts supporting a plausible theory that a defendant acted with the specific purpose of injuring competition, it fails to state a claim.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153–54 (9th Cir. 2008) ("The California Supreme Court has held that to violate this act, a generalized understanding or intent that particular conduct will injure competition is insufficient to state a claim; instead, the violator must act with the specific *purpose* of injuring its competition.") (emphasis in original).

Solyndra misses this pleading obligation by a wide mark.  The Complaint is not only devoid of any factual allegations that would meet the Act's stringent *mens rea* requirement, but also pleads facts that affirmatively ***undermine*** that required element.  As an initial matter, Solyndra implausibly claims that the alleged conspiracy against it started before Solyndra even began selling its panels.  The Complaint states that, in December 2007, Defendants entered into an agreement that resulted in a 40% price drop, and thereafter entered into two annual agreements resulting in 18% and 20% price drops, respectively.  Compl. ¶¶ 91–97.  Yet Solyndra admits that it did not start selling panels until April 2008, and that its product did not become a "splash" until

---

[16] "'Loss leader' means any article or product sold at less than cost:  (a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or (b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or (c) Where the effect is to divert trade from or otherwise injure competitors." Cal. Bus. & Prof. Code § 17030.

1  2009 and 2010.  *Id*. ¶¶ 71, 73.  By dates alone, Solyndra's own allegations make it highly

2  implausible that Defendants had the required specific intent to cut prices to harm Solyndra.

3       The closest the Complaint comes to addressing Defendants' mental states is by misquoting

4  Suntech's former CEO, Dr. Shi Zhengrong, who indicated that Suntech's goal was to gain market

5  share. [17]  But no matter how this quote is interpreted, this would still be insufficient to state a claim

6  under the Unfair Practices Act, because courts have concluded that simply selling products below

7  cost for the purpose of gaining market share or meeting competitor prices does not violate the Act.

8  *See Cel-Tech*, 973 P.2d at 545–46 ("Courts must not prohibit vigorous competition nor render

9  illegal any decision by a firm to cut prices in order to increase market share.  The antitrust laws

10  require no such perverse result, for it is in the interest of competition to permit dominant firms to

11  engage in vigorous competition, including price competition.") (citations omitted); *Food &*

12  *Grocery Bureau, Inc. v. United States*, 139 F.2d 973, 974 (9th Cir. 1943) ("It is obvious that a

13  grocer overstocked with any commodity may sell it at less than cost with no intent other than to

14  make the sale, and that such sale may not divert trade from or in any way injure any competitor or

15  deceive any customer . . . .  It is only when there is the intent or effect prohibited by section 3 [of

16  the Unfair Practices Act] that the sale below cost is prohibited by the Unfair Practices Act.").

17       Accordingly, Solyndra's Unfair Practices Act claims should be dismissed for failure to

18  state a claim.  *See Sybersound*, 517 F.3d at 1153–54 (affirming dismissal of Unfair Practices Act

19  claims where plaintiff failed to adequately plead *mens rea* requirement).

20          **3.**     **The Complaint Fails to State a Claim for Interference with Contractual
21  Relations Because It Fails Adequately to Allege a Breach of Contract or
that Defendants Induced the Breach**

22       To state a claim for interference with contractual relations, Solyndra is required to plead

23  that Defendants caused an "actual breach or disruption of the contractual relationship" it had with

24

---

25  [17] The Complaint quotes a New York Times article paraphrasing Dr. Shi stating that "'Suntech, to build market share, is selling solar panels on the American market for less than the cost of materials, assembly, and shipping.'"  Compl.

26  ¶ 3.  But Solyndra fails to mention that, two days after the article was printed, the New York Times reported that Dr. Shi misunderstood the question and that the "price that Suntech charged for each solar panel more than covered the production costs and therefore was above the marginal cost."  Declaration of Daniel E. Laytin, Ex. A.  Defendants

27  request that the Court take judicial notice of Dr. Shi's retraction.  *See In re Nuvelo, Inc., Sec. Litig.*, C 07-4056 VRW, 2008 WL 5114325, at *2 (N.D. Cal. Dec. 4, 2008) (taking judicial notice of publically available documents "to

28  consider the complete record of the defendants' alleged misstatements").

1    a third party. *See Rachford v. Air Line Pilots Ass'n, Int'l*, 284 F. App'x 473, 474–75 (9th Cir.

2    2008).[18]  Although Solyndra offers the naked conclusion that "Defendants' acts caused an actual

3    breach and/or disruption of the agreements between Solyndra and its customers" (Compl. ¶ 25),

4    other factual allegations contradict this assertion and render this claim subject to dismissal. *See*

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a

6    formulaic recitation of the elements of a cause of action will not do.") (quotations omitted).

7         The Complaint alleges that Defendants' low prices caused Solyndra to "renegotiate terms,

8    prices, and volumes less favorable than the parties had initially negotiated." Compl. ¶ 215.  It also

9    alleges that Solyndra's customers "aggressively pressed" Solyndra for more favorable pricing

10   terms and that Solyndra acquiesced to those requests by renegotiating the terms of contracts. *See*

11   Compl. ¶¶ 189, 197, 201, 215.  Notably, however, it fails to allege facts showing that there were

12   any actual breaches of contract.  Overall, Solyndra's factual allegations amount to nothing more

13   than an admission by Solyndra that it voluntarily agreed to modify contract terms.  But under

14   long-standing contract law principles, modification does not constitute a breach. *See Sapiro v.*

15   *Musicians' Union of S.F., Local No. 6*, C-87-850 AJZ, 1987 WL 58071 (N.D. Cal. Dec. 21, 1987)

16   ("According to general contract principles, parties can agree to modify the terms of their

17   agreement.") (citing U.C.C. § 2-209).  Accordingly, the Court should dismiss this claim for failure

18   to allege a breach of contract. *See, e.g.*, *Rachford*, 284 F. App'x at 475 ("The district court's

19   dismissal was [] proper" where plaintiff could not "show a breach").[19]

20        Solyndra's interference with contractual relations claim also fails for the independent

21   reason that it has not alleged sufficient intentional acts of inducement.  Solyndra merely contends

22   that Defendants intentionally interfered with its agreements with third parties "through a series of

23   acts designed to pressure Solyndra's customers to breach their agreements with Solyndra."

24

25   _____

26   [18] The elements of the claim are: "'(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

27   damage.'" *Rachford*, 284 F. App'x at 474–75 (quoting *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004)).

     [19]  Defendants also note that Solyndra has also failed to plead actual notice of the alleged contracts.  All Solyndra says

28   is that news of the alleged contracts was publicized—not that any of the Defendants actually knew about them.

1  Compl. ¶ 250.  These alleged acts included selling panels below cost and telling third-party

2  distributors and installers that they would not be competitive if they continued to buy more

3  expensive panels from Solyndra.  *Id.* ¶¶ 190, 191,197, 204, 211.  Even if these allegations are

4  taken as true, they fail to state a claim, because offering to sell goods at low prices to a third party

5  does not constitute inducement.  *See Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 36–37 (1941)  ("A

6  person is likewise free to carry on his business, including reduction of prices, advertising, and

7  solicitation in the usual lawful manner although some third party may be induced thereby to

8  breach his contract with a competitor in favor of dealing with the advertiser.").  Nor does simply

9  stating the obvious—that a distributor or installer paying more for panels is less competitive in the

10 marketplace—constitute inducement, because it is implausible that such a statement alone could

11 trigger a breach of contract.  *See VasoNova Inc. v. Grunwald*, C 12-02422 WHA, 2012 WL

12 4119970, at *4 (N.D. Cal. Sept. 18, 2012).  Accordingly, the Court should dismiss Solyndra's

13 interference with contractual relations claim for failure to plead inducement.  *See, e.g.*, *id.*

14 (dismissing claim for failure to plead that defendant induced the alleged breach); *Augustine v.*

15 *Trucco*, 124 Cal. App. 2d 229, 246 (1954) (same).

16                                   **CONCLUSION**

17        For the reasons set out above, Defendants respectfully submit that Plaintiff's Amended

18 Complaint should be dismissed with prejudice.

19                                          Respectfully Submitted,

20

21 Dated: March 8, 2013                  KIRKLAND & ELLIS LLP

22                                       */s/ Daniel E. Laytin, P.C.*

23                                       Daniel E. Laytin, P.C. (admitted *pro hac vice*)
                                         James Mutchnik (admitted *pro hac vice*)
24                                       300 North LaSalle
                                         Chicago, IL 60657
25                                       Telephone: (312) 862-2000
                                         Facsimile: (312) 862-2200

26

27

28

Eliot A. Adelson
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Fax: (415) 439-1500

*Counsel for Trina Solar Limited and Trina
Solar (U.S.), Inc.*

SHEARMAN & STERLING LLP

*/s/ James Donato*
_____
James Donato
Mikael Abye
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
*Counsel for Defendants Suntech Power
Holdings Co. Ltd. and Suntech America, Inc.*

SIMPSON THACHER & BARTLETT LLP

*/s/ James Kreissman*
_____
James Kreissman
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

Matthew J. Reilly (moving for admission *pro
hac vice*)
1155 F Street, N.W.
Washington, DC 20004
Telephone: (202) 636-5500
Facsimile: (202) 636-5502
*Counsel for Defendants Yingli Green Energy
Holding Co. Ltd. and Yingli Green Energy
Americas, Inc.*

## <u>ATTESTATION OF CONCURRENCE IN FILING</u>

Pursuant to the Northern District of California Local Rule 5-1(i)(3), I attest that

concurrence in the filing of this document has been obtained from Defendants' counsel James

Donato, Mikeal Abye, Matthew J. Reilly, and Karen Gift.

Dated: March 8, 2013                                    KIKRLAND & ELLIS LLP

                                                                     */s/ Daniel E. Laytin*

                                                                     Daniel E. Laytin
                                                                     300 North LaSalle
                                                                     Chicago, IL 60657
                                                                     Telephone: (312) 862-2000
                                                                     Facsimile: (312) 862-2200
                                                                     *Attorney for Defendants*
                                                                     *Trina Solar Limited and Trina Solar (U.S.), Inc.*