SIMPSON THACHER & BARTLETT LLP
JAMES G. KREISSMAN (SBN: 206740)
jkreissman@stblaw.com
2475 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 251-5000
Facsimile:  (650) 251-5002

MATTHEW J. REILLY (*pro hac vice*)
matt.reilly@stblaw.com
1155 F Street NW
Washington, DC  20008
Telephone: (202) 636-5500
*Counsel for Defendants Yingli Green Energy Holding Co. Ltd.*
*and Yingli Green Energy Americas, Inc.*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| The Solyndra Residual Trust, by and through its Liquidating Trustee, R. Todd Neilson, <br><br> Solyndra, <br><br> v. <br><br> Suntech Power Holdings Co., Ltd., Suntech America, Inc., Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, Yingli Green Energy Americas, Inc., <br><br> Defendants. | CASE No. CV-12-05272-SBA (EDL) <br><br> **REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS** <br><br> **Before the Hon. Saundra B. Armstrong** <br> **Date: June 4, 2013** <br> **Time: 1:00 p.m.** |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  SOLYNDRA HAS FAILED TO ADEQUATELY PLEAD PREDATORY PRICING
    AND THEREFORE CANNOT SHOW EITHER ANTITRUST INJURY OR
    STANDING TO BRING ITS CLAIMS. ........................................................................ 2

    A.  Solyndra must plead a probability of recoupment under well-established law. ...... 2

    B.  Solyndra's claim that it did plead probable recoupment is baseless. ..................... 5

    C.  Solyndra has failed to plead pricing below marginal or average variable cost. ..... 6

II.  SOLYNDRA HAS FAILED TO PLEAD A "PLAUSIBLE CONSPIRACY"
     UNDER § 1 OF THE SHERMAN ACT. ....................................................................... 7

III. SOLYNDRA HAS FAILED TO PLEAD AN ADEQUATE GEOGRAPHIC OR
     PRODUCT MARKET. ................................................................................................ 10

    A.  Solyndra proffers no basis on which to limit the relevant market to the U.S. ...... 10

    B.  Solyndra proffers no basis on which to limit the market to its own products. ...... 11

IV.  SOLYNDRA'S CONTINUED RELIANCE ON THE ITC AND DOC
     INVESTIGATIONS IS MISGUIDED. ........................................................................ 12

V.   SOLYNDRA'S STATE LAW CLAIMS SHOULD BE DISMISSED. .......................... 13

    A.  Solyndra fails to allege specific intent under California's Unfair Practices Act ... 13

    B.  Solyndra fails to plead interference with prospective economic advantage. ........ 14

    C.  Solyndra fails to state a claim for interference with contractual relations. ........... 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Amarel v. Connell,*
  102 F.3d 1494 (9th Cir. 1996) ........................................................................... 2

*Atl. Richfield Co. v. USA Petrol. Co.,*
  495 U.S. 328 (1990) ........................................................................................... 3

*Bay Guardian Co. v. New Times Media LLC,*
  114 Cal. Rptr. 3d 392 (Cal. Ct. App. 2010) ..................................................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................... passim

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
  509 U.S. 209 (1993) ........................................................................................... 2

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962) ......................................................................................... 11

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,*
  429 U.S. 477 (1977) ........................................................................................... 3

*Cargill, Inc. v. Monfort of Colo., Inc.,*
  479 U.S. 104 (1986) ........................................................................................... 5

*Cascade Health Solutions v. PeaceHealth,*
  515 F.3d 883 (2008) ........................................................................................... 7

*Conwood Co., L.P. v. U.S. Tobacco Co.,*
  290 F.3d 768 (6th Cir. 2002) ............................................................................. 4

*D & S Redi–Mix v. Sierra Redi–Mix & Contracting Co.,*
  692 F.2d 1245 (9th Cir. 1982) ........................................................................... 3

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
  902 P.2d 740 (Cal. 1995) ................................................................................. 14

*Fricke-Parks Press, Inc. v. Fang,*
  149 F. Supp. 2d 1175 (N.D. Cal. 2001) ............................................................. 3

*In re Elevator Antitrust Litig.,*
  502 F.3d 47 (2d Cir. 2007) ................................................................................. 8

*In re Flash Memory Antitrust Litig.,*
  643 F. Supp. 2d 11338 (N.D. Cal. 2009) ........................................................... 8

*In re Late Fee and Over-Limit Fee Litig.,*
  528 F. Supp. 2d 953 (N.D. Cal. 2007) ....................................................... passim

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................................ 15

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .............................................................................. 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
  63 P.3d 937 (Cal. 2003) ..................................................................................... 15

*Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp.*,
  805 F. Supp. 1277 (D.S.C. 1992) ......................................................................... 5

*Luxpro Corp. v. Apple Inc.*,
  No. C 10-03058, 2011 WL 3566616 (N.D. Cal. 2011) ........................................ 15

*Masco Contractor Servs. East, Inc. v. Beals*,
  279 F. Supp. 2d 699 (E.D. Va. 2003) .................................................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...................................................................................... 2, 5

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*,
  63 F.3d 1540 (10th Cir. 1995) .............................................................................. 4

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  791 P.2d 587 (Cal. 1990) ................................................................................... 15

*Rebel Oil Co. v. Alt. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ........................................................................... 2, 3

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) .............................................................................. 15

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................................ 14

*Traffic Scan Network v. Winston*,
  No. 92-2243, 1995 WL 317307 (E.D. La. May 24, 1995) ...................................... 4

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F. Supp. 2d 802 (C.D. Cal. 2010) ................................................................. 11

*U.S. v. AMR Corp.*,
  335 F.3d 1109 (10th Cir. 2003) ............................................................................ 7

*USA Petrol. Co. v. Atl. Richfield Co.*,
  13 F.3d 1276 (9th Cir. 1994) ............................................................................... 3

*VasoNova Inc. v. Grunwald*,
  C 12-02422, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ................................. 15

*W. Parcel Exp. v. UPS of Am., Inc.*,
    65 F. Supp. 2d 1052 (N.D. Cal. 1998) ................................................................... 3

*Wallace v. IBM*,
    467 F.3d 1104 (7th Cir. 2006) ............................................................................... 4

*Wheatland Tube Corp. v. United States*,
    17 Ct. Int'l Trade 1230 (Ct. Int'l Trade 1993) ..................................................... 13

*Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*,
    35 F. Supp. 2d 597 (S.D. Ohio 1999) ..................................................................... 4

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ................................................................................. 9

**Statutes**

19 U.S.C. § 1673 .......................................................................................................... 11

**Other Authorities**

Harvey M. Applebaum, *The Interface of the Trade Laws and the Antitrust Laws*,
    6 Geo. Mason L. Rev. 479, 484 (1998) ........................................................... 12, 13

### INTRODUCTION

Solyndra alleges a wholly implausible conspiracy that is not actionable under either § 1 of the Sherman Act or Solyndra's related state law claims. Cobbling together vague, conclusory allegations that rely on nothing more than allegedly parallel pricing or Defendants' shared country of origin, the crux of Solyndra's allegations is that Defendants conspired to charge prices that were *too low*. Because low prices overwhelmingly benefit consumers, however, the Supreme Court has repeatedly recognized that allegations of a conspiracy to lower prices are only sufficient when accompanied by both (1) specific allegations regarding the who, what, where, when, and how of an agreement to engage in predatory pricing and (2) a likelihood that defendants can recoup their losses, harming *consumers* through higher prices in the future.

Solyndra's opposition turns these requirements on their head. Relying on a strategic decision to eliminate its § 2 claim, Solyndra now contends that it need not allege *any* probability of recoupment at all. Put differently, Solyndra apparently argues that it need show nothing more than that Defendants lowered prices around the same time, without pleading any likelihood that they will ever actually profit from the conspiracy—or that consumers ever will be harmed by higher prices. But allegations of sustained lower prices are entirely consistent with the vigorous marketplace competition *celebrated* by the antitrust laws. Solyndra's attempt to plead a predatory pricing claim with no likelihood of recoupment turns an implausible allegation into a nonsensical one.

The Court should dismiss these allegations for at least three separate and independent reasons. *First*, Solyndra erroneously attempts to read the recoupment element out of its predatory pricing claim altogether, effectively conceding Defendants will not recoup any purported losses. *Second*, even if Solyndra were not required to show recoupment, none of its allegations specifically plead a plausible conspiracy by numerous, unrelated entities to *lower* prices and *lose* money. *Finally*, Solyndra still has identified no basis on which to limit the geographic market to the United States (when it admits that it sold, and that other solar panel makers sell, to a worldwide market) or to limit the product market to Solyndra's own products (a claim that is wholly unsupported).

In short, Solyndra has pled a deficient predatory pricing claim with no probability of recoupment and an irrational conspiracy among a large number of entities to lower prices with no

ability to profit therefrom.  Solyndra has not stated and cannot state a claim.  The Amended

Complaint should be dismissed with prejudice.

## ARGUMENT

I.    **Solyndra has failed to adequately plead predatory pricing and therefore cannot show either antitrust injury or standing to bring its claims.**

A.    **Solyndra must plead a probability of recoupment under well-established law.**

Solyndra asserts that, because it brings its claims under § 1 rather than § 2 of the Sherman Act, it need not plead any probability of recoupment.  Opposition ("Opp.") at 13:7–14:13. Solyndra's claims are deficient for this reason alone.

Solyndra concedes that, under § 1 of the Sherman Act, it must allege "(1) collusion to fix *predatory prices*, and (2) causal *antitrust injury*."  Opp. at 13:9–11 (emphasis added) (citing *Rebel Oil Co. v. Alt. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995)).  Similarly, Solyndra properly acknowledges that "[l]osses . . . suffer[ed] as a result of *predatory pricing* is a form of antitrust injury because '*predatory pricing* has the requisite anticompetitive effect' against competitors." Opp. at 16:9–10 (quoting *Amarel v. Connell*, 102 F.3d 1494, 1508 (9th Cir. 1996)) (emphasis added).  Nevertheless, Solyndra then inexplicably contends that—because it brings claims under § 1 rather than § 2—it need not show one of the two elements of a "predatory pricing" claim at all:  the probability of future recoupment.

This novel assertion is simply contrary to settled Supreme Court law.  *Brooke Group* established that a "prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices."  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (analyzing claims under Robinson-Patman Act and § 2 of the Sherman Act).  As *Brooke Group* explained, "[t]hese prerequisites to recovery are not easy to establish, but they are not artificial obstacles to recovery; rather, they are *essential components of real market injury*."  *Id.* at 226 (emphasis added); *accord, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986) ("The success of *any* predatory scheme depends on *maintaining* monopoly power for long enough both to

recoup the predator's losses and to harvest some additional gain.") (first emphasis added).  Thus, even a price-fixing "agreement [that] is ***unlawful*** under § 1 of the Sherman Act . . . does not cause a competitor antitrust injury unless it results in predatory pricing."  *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 339 (1990) (emphasis added).  These decisions do not draw any fundamental distinction between § 1 and § 2 in finding that recoupment is necessary to show any antitrust injury, and with good reason:  any conspiracy to ***lose*** money ***helps*** consumers and competition, unless those losses are later recouped through higher prices.

While this Supreme Court precedent alone requires dismissal here, the Ninth Circuit is in accord.  In *Rebel Oil* (cited by Solyndra in Opp. at 13:9–11), the Ninth Circuit expressly held that a § 1 plaintiff must show that the defendant possessed "market power, or [was] dangerously close to obtaining it," noting that, otherwise, below-cost pricing amounts to nothing more than "unsuccessful predation," which is "in general a boon to consumers."  52 F.3d at 1435, 1444 (citing *Brooke Group*).  Similarly, the Ninth Circuit has stated in no uncertain terms that "[p]ricing is predatory when a seller foregoes short-term profits in order to develop a market position ***from which it can later raise prices and recoup lost profits***."  *D & S Redi–Mix v. Sierra Redi–Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) (emphasis added); *accord, e.g.*, *USA Petrol. Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1286 (9th Cir. 1994) (indicating that a § 1 predatory "pricing scheme should be judged by the Sherman Act section 2 standard" announced in *Brooke Group*).  In short, recoupment ***is*** the way in which a plaintiff shows antitrust injury flowing from alleged predatory pricing.  Other decisions in this district are in accord.  *See, e.g.*, *W. Parcel Exp. v. UPS of Am., Inc.*, 65 F. Supp. 2d 1052, 1063 (N.D. Cal. 1998) ("Predatory pricing is only harmful when the predator succeeds in recouping the losses it suffered by its earlier below-cost pricing").[1]

---

[1] In response to this long-settled jurisprudence, Solyndra relies on a single, 12-year-old, non-binding decision, *Fricke-Parks Press, Inc. v. Fang*, 149 F. Supp. 2d 1175 (N.D. Cal. 2001), to argue that "section 1 claims do not require the plaintiff to demonstrate the section 2 elements of 'predatory or anticompetitive conduct' and a 'dangerous probability of achieving monopoly power.'"  Opp. at 13:15–16.  But the Ninth Circuit decisions cited in *Fricke-Parks* and in Solyndra's own brief do not support its position, as set out above.  Indeed, *Fricke-Parks* itself recognizes that "an antitrust plaintiff 'must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"  *Id.* at 1179 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)) (emphasis in original).

Not surprisingly, courts in other circuits have also routinely found that recoupment is required to show predatory pricing for § 1 and § 2 claims alike.  *See, e.g.*, *Wallace v. IBM*, 467 F.3d 1104, 1106 (7th Cir. 2006) (Easterbrook, J.) (when "recoupment is improbable even if some producers give up the market, ***there is no antitrust problem***") (emphasis added); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*, 63 F.3d 1540, 1548–49 (10th Cir. 1995) ("To establish a section 1 violation, [plaintiff] must show a conspiracy to engage in short-term price cutting to secure long-term monopoly profits . . . . Because of the time value of the money lost through price cuts and the uncertainty involved . . . a conspiracy is rational only if the conspirators have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered.") (internal quotation marks omitted).[2]

Thus, while Solyndra baldly argues that "[t]he case upon which Defendants rely for their misguided argument that recoupment is required [*Brooke Group*] was a price discrimination case under the Robinson-Patman Act that applied Section 2 principles," Opp. at 13:20–22, Solyndra cannot explain why recoupment would not also be required for substantively identical allegations brought under § 1.  Courts have consistently found that recoupment is a necessary element for a § 1 predatory pricing conspiracy.  Without the possibility of recoupment, all Solyndra can allege is that it went out of business because Defendants allegedly agreed to sell products at lower prices[3]—the very low prices that the antitrust laws are designed to promote:  "To hold that the antitrust laws protect competitors from the loss of profits due to . . . price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share.  The antitrust laws

---

[2] *Accord, e.g.*, *Traffic Scan Network v. Winston*, No. 92-2243, 1995 WL 317307, at *12 (E.D. La. May 24, 1995) (holding that "the absence of evidence of below-cost pricing and of the ability to recoup" defeats a § 1 claim); *Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 35 F. Supp. 2d 597, 610 (S.D. Ohio 1999) ("Under . . . § 1 . . . the Supreme Court has required that a plaintiff alleging unfair competition based upon a competitor's low pricing of a product show that such below-cost-pricing was reasonably intended to drive out competitors, creating subsequent market conditions in which a defendant could raise prices and recoup the losses incurred . . . .").

[3] Solyndra also suggests that antitrust harm can arise from reducing innovation, but reduced innovation or consumer choice is not an antitrust injury *to Solyndra*.  *See* Opp. at 16 n.20.  Without suffering antitrust injury, Solyndra lacks standing to bring this suit.  *See, e.g.*, *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 788 (6th Cir. 2002) (cited in Opp. at 16 n.20) ("to recover damages, an antitrust plaintiff must show . . . that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions") (noting evidence of higher prices) (internal quotation marks omitted).

require no such perverse result." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986). Simply put, "a conspiracy, which could not hope to recoup its expenses incurred from alleged below-cost pricing and [is] therefore economically senseless, [does] not violate the antitrust laws." *Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp.*, 805 F. Supp. 1277, 1288 (D.S.C. 1992), *aff'd*, 998 F.2d 1009 (4th Cir. 1993) (citing *Matsushita*, 475 U.S. at 597–98).

**B.    Solyndra's claim that it did plead probable recoupment is baseless.**

Solyndra's argument in the alternative that it *did* plead a "dangerous probability of recoupment" here also defies credulity. *See* Opp. at 14:1–2. To the contrary, Solyndra specifically *removed* its § 2 claim because it (wrongly) believed that doing so would alleviate its burden to plead probable recoupment, *see* Opening Brief at 10:15–21—a burden that Solyndra cannot meet.

*First*, the Amended Complaint *concedes* that the Defendants have yet to recoup any alleged costs or losses through increased prices—even after many manufacturers have exited the industry. Am. Compl. ¶¶ 181, 151; *see, e.g.*, *Matsushita*, 475 U.S. at 590–91 (failure to achieve monopolization years after alleged scheme began undermined plaintiffs' claim). The Amended Complaint never once uses the words "recoup," "recoupment," or even "recover." *See generally* Am. Compl.

*Second*, Solyndra's Amended Complaint is replete with allegations that affirmatively show there is no danger of recoupment in this market. Indeed, Solyndra alleges that Defendants have "little interest" in increasing profits—their "primary motivation" in a "non-market economy" being to "maximize employment and executive compensation." Am. Compl. ¶ 181. In addition, even under Solyndra's inflated market share calculations, Defendants lack the market power to recoup in the future. Defendants' alleged *combined* 65% share does not approach monopoly status and could not have sustained supracompetitive prices. *See* Am. Compl. ¶ 40.[4] There simply is no possibility, let alone any probability, of recoupment under these circumstances. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 n.1 (2007) (affirming motion to dismiss § 1 claim where plaintiff

---

[4] Moreover, Solyndra only calculates a 65% combined market share by arbitrarily excluding (1) First Solar (the overall market leader in the solar industry), (2) the residential and utility sectors, and (3) other competitive forms of electricity generation. *See* Am. Compl. ¶¶ 25, 35, 40.

1   alleged market share of at least 90%); *Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d

2   699, 707 (E.D. Va. 2003) (granting motion to dismiss where alleged predator controlled up to 75%

3   of the market); *see also In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D.

4   Cal. 2007) (Armstrong, J.) (doubting that a 70% share would "render the . . . conspiracy plausible").

5       *Finally*, Solyndra alleges marketplace conditions that foreclose the possibility of

6   recoupment.  Solyndra asserts that many different competitors have entered and left the market in

7   recent years, in part because the "technology in the commercial and industrial rooftop solar

8   photovoltaic market is constantly evolving" and because, "[i]f a competitor's system or process fails

9   to perform, that competitor will almost certainly fail to generate sufficient revenue to support

10  operations."  Am. Compl. ¶ 38; *see also id. at* 151–55.  Solyndra similarly relies on reports issued

11  by the ITC and DOC that point to a recent *increase* in competition, despite the alleged exit of

12  several competitors:  "a number of firms began manufacturing CSPV cells and/or CSPV modules in

13  the United States," while "the domestic industry progressively increased capacity."  Declaration of

14  Matthew J. Reilly ¶ 2, Ex. A (Excerpts of ITC Final Rpt.) (hereinafter "ITC Final") at 25–26, 29.[5]

15  The ITC Final report also outlines other market conditions that virtually foreclose any possibility

16  (much less probability) of recoupment, including (1) the sunset of many government incentive

17  programs that initially accelerated demand; (2) the fact that even those state mandates which

18  continue do not specify the need to employ any particular type of solar technology; and (3)

19  competition from traditional energy sources.  *Id.* at 21–22, 24.  Solyndra's own allegations and

20  evidence thus show a significant *increase* in competition in the industry, combined with ready

21  alternatives should prices increase—facts that destroy Solyndra's already reed-thin claim that there

22  is any likelihood of recoupment here.

23      **C.   Solyndra has failed to plead pricing below marginal or average variable cost.**

24      Finally, Solyndra's predatory pricing claim also falls short for the separate reason that it has

25  failed to plead pricing below marginal or average variable cost, which it concedes is the standard

---

[5] As set out at length below, the findings of the relevant investigations, which are cited and
incorporated by reference in Solyndra's Amended Complaint, confirm that Solyndra cannot
possibly state a claim here.  *See In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d at 957
(citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

most recently indicated by the Ninth Circuit—even while continuing to assert that it need not allege pricing below any particular cost measure at all. *See* Opp. at 15:9–14 (acknowledging standard indicated by *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 910 at n.19 (2008)). *Accord, e.g.*, *U.S. v. AMR Corp.*, 335 F.3d 1109, 1117 (10th Cir. 2003) (following *Brooke Group* in rejecting cost measures that are "not proxies for marginal or incremental cost").[6]

Even if the Court declines to adopt a marginal cost or similar standard, moreover, Solyndra has failed to allege that Defendants priced below ***any*** measure of incremental cost—instead baldly stating that defendants priced "below-cost," without explaining what that means. Opp. at 14:15–17; *see generally* Am. Compl. But as the Supreme Court recognized in *Twombly*, "labels and conclusions" like these are insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555.

## II. Solyndra has failed to plead a "plausible conspiracy" under § 1 of the Sherman Act.

Even if Solyndra were not required to (or did) show recoupment, none of its allegations specifically plead a plausible conspiracy by Defendants and numerous unrelated entities to fix ***lower prices*** and ***lose*** money. Faced with the problem that its conspiracy allegations have no factual support and are fundamentally irrational, Solyndra asks this Court nonetheless to find the conspiracy "plausible" simply because Defendants are from China (a "non-market" economy). The Court should reject Solyndra's invitation to substitute inferences based on Defendants' shared nationality for allegations based on facts. This is especially true because the Complaint itself provides a more plausible explanation than conspiracy for price decreases.

To state a § 1 claim, Solyndra's allegations must "suggest[] . . . a preceding agreement, not merely parallel conduct that could just as well be independent action." *In re Late Fee*, 528 F. Supp. 2d at 962 (Armstrong, J.) (citing *Twombly*, 550 U.S. 557). Solyndra provides no specific evidence of "when, where, [and] by whom" any alleged agreement was made. Opp. at 11:6–9. Instead, it

___

[6] Solyndra also contends in the alternative that it ***has*** alleged that Defendants priced below their "average variable cost." Opp. at 15:22–16:4. But the portion of the Amended Complaint on which Solyndra relies sets out nothing more than a single statement by Suntech's CEO to a newspaper— which the paper was later forced to retract. *See* Am. Compl. ¶ 161; Opp. at 9 n.8. Similarly, in other portions of its pleading, Solyndra selectively quotes speculation from U.S. producers that Defendants priced below cost. Opp. at 6:19–25. These cites hardly give rise to a plausible inference that Defendants conspired to sell products below any marginal or variable cost measure.

___

relies solely on "'stray statements' about agreements . . . unsupported by **concrete** allegations about the **content and circumstances** of any actual agreement." *In re Late Fee*, 528 F. Supp. 2d at 962 (emphasis added) (citing *Twombly*, 550 U.S. at 565 n.10). Solyndra grasps for straws, based on unspecified "information and belief," alleging that unnamed "leaders" agreed to lower prices "uniformly" at three annual China New Energy International Forums. Am. Compl. ¶ 92. This allegation is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever," and fails to defeat a motion to dismiss. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50–51 (2d Cir. 2007). In other words, if Solyndra's allegations are sufficient, **any** plaintiff, across any industry, could cobble together vague allegations sufficient to state a § 1 claim.

Acknowledging its inability to offer concrete allegations about the content and circumstances of any actual agreement, Solyndra attempts to repackage its allegations as "plus factors." Opp. at 8:21–10:7. But Solyndra's artificial list of "plus factors" boils down to only three distinct allegations,[7] none of which is sufficient to state a claim. *See In re Late Fee*, 528 F. Supp. 2d at 963. These supposed "plus factors" have already been rejected by this Court and *Twombly*. *Id.*

- **Opportunities to Communicate.** Solyndra repeatedly attempts to rely on shared nationality, shared addresses,[8] and trade association participation to suggest impropriety. But "other courts have consistently refused to infer the existence of a conspiracy from these kinds of averments." *Id.* (citation omitted); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1148 (N.D. Cal. 2009) (Armstrong, J.) (recognizing that allegations of participation in industry trade associations "cannot alone support [plaintiff's] claims"). Moreover, many of these allegations do not even purport to show a conspiracy to reduce prices. For example, Solyndra alleges that an "informant" reported Defendants' salespeople "regularly traveled, met, and socialized," Am. Compl. ¶ 98—without saying who these

---

[7] At least eight of Solyndra's purported "plus factors" are essentially the same, insufficient allegation—that Defendants charged below-cost prices and sustained losses. Opp. at 8–10.

[8] Even the flimsy assertion that "Trina and Yingli share a corporate headquarters in the Cayman Islands," Opp. at 9:8, is entirely misleading. In its Amended Complaint, Solyndra alleges nothing more than that these companies share an "address" in the Cayman Islands, Am. Compl. ¶ 99, while acknowledging repeatedly that all of the Defendants maintain their operational headquarters in China. *See, e.g., id.* ¶¶ 14, 16, 18. Further, as this Court is aware, it is not unusual for multiple companies to share addresses in the Cayman Islands.

---

salespeople were, what they talked about, or what the context was for this "socializing," much less how it could possibly show any alleged conspiracy to engage in predatory pricing.

- **Below Cost Pricing and Losses.**  Solyndra also attempts to invoke Defendants' alleged losses to suggest that they engaged in a conspiracy.  But nothing besides nationality distinguishes Defendants' alleged losses from those of Solyndra or the "dozen major American solar manufacturers [now] out of business."  Opp. at 5:17–18; Am. Compl. ¶ 171.

- **Exports.**  Finally, Solyndra again asks the Court impermissibly to infer conspiratorial motives from Defendants' shared nationality—specifically, the fact that each defendant allegedly exported "95% of their production," "despite the desperate need for it in their home country."  Opp. at 8:25–28; Am. Compl. ¶¶ 22, 100.  But Solyndra nowhere alleges what percentage of each Defendant's product was exported *to the U.S.*, rather than to other global markets.  Moreover, nowhere does Solyndra even attempt to allege the existence of an available market in China for solar panels, much less one that is a commercially viable alternative to selling in the U.S. or to any number of other countries around the world.  Solyndra's protectionist exhortations have no place in antitrust law, which encourages robust competition—regardless of whether it comes from the U.S. or abroad.

Moreover, Solyndra's "plus factors" cannot explain why the alleged co-conspirator banks and polysilicon manufacturers would enter into a conspiracy to lose money.  Solyndra's only explanation for *their* alleged scheme to subsidize Defendants' losses—that China is a "non-market" economy, Opp. at 11:16–21—is economically irrational and again unavailing.[9]  *See Twombly*, 550 U.S. at 565 (alleged conspiratorial conduct is to be "viewed in light of common economic experience"); *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (same).  In other words, Solyndra's utterly irrational allegations are not rendered plausible merely because the co-conspirators are from China.

---

[9] Furthermore, Solyndra relies on allegations that *Defendants*—not the alleged co-conspirators—are seeking to advance objectives such as maximizing employment or increasing compensation.  Opp. at 11:16–21 (citing Am. Compl. ¶¶ 181–82).

Finally, as in *Late Fee* and *Twombly*, "the complaint itself provides an alternative explanation for the [change in prices], namely that they were the result of a 'rational and competitive business strategy unilaterally prompted by common perceptions of the market.'" *In re Late Fee*, 528 F. Supp. 2d at 962–63 (citing *Twombly*, 550 U.S. at 554). Solyndra's own allegations substantiate this "obvious alternative explanation":

- A steady wave of new entrants (including Solyndra) was supported by government subsidies and induced by "more than $200 billion of financial opportunity." Am. Compl. ¶ 29.

- The U.S. instituted "various initiatives for encouraging the solar industry." *Id.* ¶ 140.

- Because supply was increasing faster than projected demand, industry analysts predicted a price decline. *Id.* ¶¶ 82, 101–02. Solyndra concedes that fifteen of sixteen domestic producers also reduced their prices "in order to compete." *Id.* ¶ 143.

Moreover, the ITC investigation on which Solyndra relies wholeheartedly ***supports*** the obvious alternative explanation that the solar panel market was becoming increasingly competitive, and that prices therefore dropped across the board. For instance, the ITC Final report notes that:

- "Declining polysilicon prices eroded the advantage thin-film products [like Solyndra's] may have had over CSPV products [like Defendants'] in terms of price . . . ." ITC Final at 22.

- "During a time of very significant demand growth in the U.S. market, a number of firms began manufacturing CSPV cells and/or CSPV modules in the United States." *Id.* at 25–26.

- "Despite numerous closures of U.S. manufacturing facilities, the domestic industry progressively increased capacity and had additional production capacity." *Id.* at 29.

These findings portray an increasingly competitive industry spurred by incentives, new entrants, increased supply, and falling prices—providing an alternative explanation for decreasing solar cell prices and moving Solyndra's allegations ***further*** away from any "context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557.

## III. Solyndra has failed to plead an adequate geographic or product market.

### A. Solyndra proffers no basis on which to limit the relevant market to the U.S.

Solyndra concedes the relevant geographic market "must conform to 'commercial realities of the industry and be economically significant.'" Opp. at 17:21–22 (quoting *Brown Shoe Co. v.*

*United States*, 370 U.S. 294, 336–37 (1962)).  Solyndra likewise admits that it had competitors in Europe, Am. Compl. ¶ 80, and competed for the business of several German distributors, which installed systems "across the European Union," *id.* ¶ 208, and "around the world."  *Id.* ¶ 199.

Faced with these allegations in its own pleading, Solyndra offers no meaningful support for its claim that the U.S. represents a distinct market for purposes of its Sherman Act claim.  Solyndra argues that some competition took place in the U.S., resulting in U.S. bankruptcies.  Opp. at 18:1–3.  But this allegation is economically insignificant without knowing how many solar companies in *other* countries failed during the same period.  Similarly, while Solyndra once again relies on the ITC and DOC investigations, those agencies only found the U.S. to be "a relevant market," Am. Compl. ¶ 33—an allegation that in no way supports Solyndra's claim that this is an adequate geographic market *for purposes of its antitrust claims*.[10]  Finally, Solyndra's remaining allegations that Defendants have U.S. subsidiaries and that the U.S. has "its own regulatory system," Opp. at 18:11–12, fail to explain how this contrasts with any other multinational corporations or U.S. or foreign regulatory systems.[11]  None of these allegations remotely suggest any "commercial realities of the industry" that are "economically significant" and support limiting the geographic market to the United States.  *See Brown Shoe*, 370 U.S. at 336–37.

### B. Solyndra proffers no basis on which to limit the market to its own products.

Solyndra's proposed product market—the commercial and industrial rooftop (or "CIR") market, *see* Opp. at 3:1–6; Am Compl. ¶ 35—is also unsupported by its own factual allegations.  *First*, Solyndra simply ignores the fact that its thin-film technology was explicitly *excluded* from the ITC and DOC dumping analysis that forms the gravamen of Solyndra's Complaint.  *See, e.g.*, ITC Final at 11–12.[12]  *Second*, Solyndra contends that factors such as high efficiency, low weight,

---

[10] This argument is especially unpersuasive in light of the fact that the ITC only has *jurisdiction* over alleged injury to U.S. markets based on the importation of foreign goods.  *See* 19 U.S.C. § 1673.

[11] Solyndra's reliance on *TYR Sport, Inc. v. Warnaco Swimwear, Inc.* is misplaced.  In that case, the plaintiff provided evidence of numerous factors differentiating the U.S. and global markets for competitive swimwear, factors that do not apply to the global solar energy market.  *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 802, 816 (C.D. Cal. 2010) (cited in Opp. at 18:16–23).

[12] Whether the ITC rightly excluded thin-film products is irrelevant to assessing whether Solyndra has pled sufficient facts to support a relevant product market.  The relevant fact is that the very report on which Solyndra repeatedly relies directly contradicts its allegations.

ease of installation, non-invasive mounting, and ease of maintenance all characterize the CIR market, *see* Opp. at 19:14–15, but fails to explain why it has excluded **residential** rooftop installations, which meet the same criteria. *Finally*, Solyndra contends that it has sufficiently distinguished solar energy from traditional means of generating electricity, based on the existence of government subsidies and the need for fossil fuels alternatives—but then excludes those very alternatives, such as wind, biomass, and geothermal energy sources. *See* ITC Final at 21–22.

## IV. Solyndra's continued reliance on the ITC and DOC investigations is misguided.

Solyndra attempts to gloss over the weaknesses of its Amended Complaint and its pleading deficiencies by erroneously relying on—and misinterpreting—the ITC and DOC investigations. Solyndra's efforts are insufficient to defeat Defendants' motion to dismiss, for at least three reasons.

*First*, these reports do not contain evidence of "below-cost" pricing; rather, as Solyndra concedes, they do nothing more than summarize the government's inquiry into whether sales were at "less than fair value." Am. Compl. ¶ 6. Simply put, "there can be dumping (sales below normal value) even if the sales in both markets are profitable." Harvey M. Applebaum, *The Interface of the Trade Laws and the Antitrust Laws*, 6 Geo. Mason L. Rev. 479, 484 (1998).

*Second*, as set out above, the trade investigations often flatly contradict Solyndra's allegations in this litigation. For example, the trade investigations contradict Solyndra's claimed product market. The ITC specifically excluded Solyndra's products from Defendants' product market, ITC Final at 11–12, as discussed above, yet Solyndra attempts to plead a product market that includes both its products **and** Defendants' products. *See supra* § III.B. Similarly, as detailed above, the ITC and DOC inquiries only confirm that Solyndra cannot show any likelihood of recoupment because of the increasingly competitive solar panel market and grid parity—solar panel prices must remain competitive with traditional energy sources, or consumers simply will not purchase them. *See supra* § I.B.

*Finally*, contrary to Solyndra's argument, nothing in this case has "already [been] determined by the ITC." Opp. at 3:18. Defendants have appealed those findings, and, more fundamentally, antidumping proceedings bear little resemblance to judicial determinations and are given no preclusive weight, because, *inter alia*, "[t]he parties do not have 'adequate opportunity to

litigate' . . . because the procedural safeguards of a trial are lacking," and "[t]here is no

administrative law judge . . . no cross-examination, no ability to call opposing witnesses, and no

compulsory process." *Wheatland Tube Corp. v. United States*, 17 Ct. Int'l Trade 1230, 1238–39

(Ct. Int'l Trade 1993).[13]  Given these fundamental, profound differences and objectives between

trade proceedings and antitrust actions, it is no surprise that Solyndra fails to cite a single Sherman

Act case in which DOC or ITC findings have been given any weight at all, let alone the enormous

deference Solyndra seeks.[14]

## V.     Solyndra's state law claims should be dismissed.

Should the Court decide to exercise supplemental jurisdiction over Solyndra's state-law

claims,[15] the Court should dismiss all of these causes of action for failure to state a claim.[16]

### A.     Solyndra fails to allege specific intent under California's Unfair Practices Act.

In an effort to meet its pleading burden under California's Unfair Practices Act, Solyndra

offers the conclusory assertion that Defendants acted on numerous occasions with the specific

purpose of "destroying Solyndra."  Opp. at 24:7.  But Solyndra also pleads factual allegations that

completely ***undermine*** any effort to meet the "especially stringent" *mens rea* requirement of

specific intent.  *Bay Guardian Co. v. New Times Media LLC*, 114 Cal. Rptr. 3d 392, 405 (Cal. Ct.

App. 2010).

---

[13] Moreover, "[t]he antitrust laws manifestly have much higher standards of injury and causation," Applebaum, 6 Geo. Mason L. Rev. at 482.  "[T]he trade laws are generally not concerned with ensuring an open competitive process or with maximizing consumer welfare," while "antitrust laws are intended to ensure free and open market competition and . . . consumer welfare."  *Id.* at 480.

[14] Solyndra also repeatedly misstates the ITC record.  In direct contradiction to Solyndra's assertion, Opp. at 7:5, the ITC "determine[d] that critical circumstances"—which signifies nothing more than whether or not retroactive duties will be put in place —"***do not exist***."  ITC Final at 3 (emphasis added).  Similarly, Solyndra repeatedly claims that Defendants were found "guilty" of dumping, Opp. at 1:23, 6:12, 21:18, but this phrase is found nowhere in the DOC and ITC reports, because these "[a]ntidumping proceedings are investigatory, not adjudicatory."  *Wheatland*, 17 Ct. Int'l Trade at 1238 (citation omitted).

[15] Solyndra does not even respond to Defendants' authority showing that the Court should decline to exercise its supplemental jurisdiction here, tacitly conceding the point.  *See* Opp. at 21:3–25:15.

[16] Solyndra's Cartwright Act claim fails for the same reasons as its Sherman Act claim.  *See In re Late Fee*, 528 F. Supp. 2d at 965.  Solyndra proffers not a single case to support its bald claim that "recoupment is not a required element of a Cartwright Act claim," Opp. at 21:3–9, an assertion flatly inconsistent with the numerous decisions finding that Cartwright Act claims rise or fall with a plaintiff's parallel Sherman Act claims, as discussed in Defendants' Opening Brief at 21:12–20.

Most importantly, Solyndra alleges that Defendants conspired to drop prices the year **before** Solyndra even entered the market.  Am. Compl. at ¶¶ 71–73, 91–97.  When confronted with this logical contradiction, Solyndra reverses course and instead claims that Defendants were not targeting Solyndra itself, but rather the entire U.S. solar industry.  Opp. at 25:7–11.  But such allegations of **general** intent are insufficient to state a claim as a matter of law in this circuit.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1154 (9th Cir. 2008) (affirming dismissal where plaintiff alleged defendants knew "below-cost sales would undercut the prices of their competitors . . . and specifically intended to injure competitors" and observing that "intent to injure competitors is insufficient; [plaintiff] must allege [defendants'] purpose was to injure [plaintiff].").

**B.**     **Solyndra fails to plead interference with prospective economic advantage.**

Because Solyndra fails to state a § 1 or any other claim, it also fails to plead the independent "wrongful act" required to state a claim for interference with economic relations.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 751 (Cal. 1995) (holding plaintiff "must plead" that defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself").  Contrary to Solyndra's arguments, the ITC and DOC findings do not themselves constitute a "wrongful act" sufficient to state a claim for tortious interference, because, among other things, they are not even applicable to Solyndra's solar panels, which are the subject of this lawsuit:  the ITC and DOC findings explicitly **exclude** Solyndra's thin-film products from the dumping analysis, as set out at length above.  Am. Compl. ¶ 56; ITC Final at 11 (finding that "thin-film products should not be included in the same [U.S. product group most similar to the foreign product under investigation] as CSPV cells and CSPV modules").  Unlike the decisions on which Solyndra relies, there is thus no connection between the alleged "wrongful act" and interference.[17]

**C.**     **Solyndra fails to state a claim for interference with contractual relations.**

Finally, Solyndra nakedly alleges "an actual breach and/or disruption" of Solyndra's contracts with third parties, Am. Compl. ¶ 251, but fails to plead facts showing any such thing.  *See*

---

[17] Solyndra also offers no authority or explanation as to how a regulatory finding regarding alleged **dumping** could be a "wrongful act" with respect to the alleged **predatory pricing** claims here.

Opening Brief at § IV.B.3.  To the contrary, Solyndra concedes in its opposition that it is alleging it was forced to "to **renegotiate** new agreements at lower prices or risk losing the customer completely."  Opp. at 22:12–13 (emphasis added).  These allegations constitute non-actionable voluntary contract modifications, which cannot form the basis for an interference claim.[18]

Moreover, Solyndra has failed to plead facts supporting any plausible inference that Defendants "desire[d] to bring about the interference or [knew that it was] certain or substantially certain to occur as a result of [their] action."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 952 (Cal. 2003).  To the contrary, Solyndra does not even identify **who** was involved in the purported encounters between Defendants and Solyndra's customers, **when** or **where** these encounters took place, or **what** was actually said.  Solyndra has also failed adequately to plead facts plausibly suggesting that Defendants knew any discussions with Solyndra's customers would lead to the renegotiation of any contracts, much less that Defendants specifically desired that result.

Finally, Solyndra again fails to address the far more plausible reason that customers sought modifications to their contracts:  given the shift in market conditions, customers simply used the surfeit in solar panel supply to negotiate more favorable pricing with Solyndra.  *See, e.g.*, *VasoNova Inc. v. Grunwald*, C 12-02422, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ("a plaintiff . . . must allege that the contract . . . was breached and abandoned **by reason of the defendant's wrongful act**") (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990)) (emphasis added).  Solyndra cannot hang its tortious interference claim on activities that represent nothing more than vigorous competition in the marketplace.

## CONCLUSION

For the reasons set out above, Defendants respectfully submit that Solyndra's Amended Complaint should be dismissed with prejudice.[19]

---

[18] Solyndra's cases are not to the contrary.  For example, Solyndra relies on an unpublished opinion that involved the termination, not modification, of a contract.  *See* Opp. at 23:10 (citing *Luxpro Corp. v. Apple Inc.*, No. C 10-03058, 2011 WL 3566616 (N.D. Cal. 2011)).

[19] Because Solyndra has had (1) the opportunity to amend once already, Docket No. 69, and (2) the benefit of significant early discovery, Docket No. 66, and because (3) future amendment would be futile in light of the absence of any likelihood of recoupment and the other factors set out above, dismissal with prejudice is appropriate here.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738–39 (9th Cir. 1987).

1

Dated:  May 3, 2013                        SIMPSON THACHER & BARTLETT LLP

2

                                           By:    /s/ James Kreissman
3                                                 James Kreissman

4                                                 Matthew J. Reilly

5                                                 Attorneys for Defendants
                                                  Yingli Green Energy Holding Co. Ltd. and
6                                                 Yingli Green Energy Americas, Inc.

7

                                           SHEARMAN & STERLING LLP
8

9                                          By:    /s/ James Donato
                                                  James Donato
10

11                                                Mikael Abye

12                                                Attorneys for Defendants
                                                  Suntech Power Holdings Co., Ltd. and
13                                                Suntech America, Inc.

14

15                                         KIRKLAND & ELLIS LLP

16

                                           By:    /s/ Eliot A. Adelson
17                                                Eliot A. Adelson

18                                                Daniel E. Laytin
19                                                James Mutchnik

20                                                Attorneys for Defendants
                                                  Trina Solar Limited and
21                                                Trina Solar (U.S.), Inc.

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the Northern District of California's General Order No. 45, Section X(B) and Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from Defendants' counsel Matthew J. Reilly, James Donato, Mikael Abye, Eliot A. Adelson, and Daniel E. Laytin.

Dated: May 3, 2013                               SIMPSON THACHER & BARTLETT LLP


By:     */s/ James Kreissman*
         *James Kreissman*

         2475 Hanover Street
         Palo Alto, California  94304
         Telephone:  (650) 251-5000
         Facsimile:  (650) 251-5002

         *Attorney for Defendants*
         Yingli Green Energy Holding Co. Ltd. and
         Yingli Green Energy Americas, Inc.