Counsel Listed on Signature Block

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE SOLYNDRA RESIDUAL TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, R. TODD NEILSON<br><br>Plaintiff,<br><br>v.<br><br>SUNTECH POWER HOLDINGS CO., et al.<br><br>Defendants. | **Case No. 12-cv-5272 (SBA) (EDL)**<br><br>**AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT**<br><br>Date:   May 15, 2013<br>Time:  2:30 p.m.<br>Place:  Via Telephone |

Plaintiff and Defendants (together, "the Parties") in the above captioned litigation hereby submit this revised Joint Statement in advance of the May 15, 2013 case management conference, pursuant to Federal Rule of Civil Procedure 26 and the Court's order of February 7, 2013 (Dkt. 65), which continued the case management conference in view of Defendants' motion to dismiss. Defendants filed their motion to dismiss on March 8, 2013 (Dkt. 74); Plaintiff filed its opposition thereto on April 12, 2013 (Dkt. 76), and Defendants filed their reply on May 3, 2013 (Dkt. 77). A hearing on the motion to dismiss has been scheduled for June 4, 2013 (Dkt. 71).

The Parties previously filed a joint case management statement on January 31, 2013 (Dkt. 63). For convenience, the Parties again include the matter required under Fed. R. Civ. P. 26(f).

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## 1. JURISDICTION AND SERVICE

### a. Subject Matter Jurisdiction

Plaintiff brings a claim under Section 1 of the Sherman Act (15 U.S.C. § 1), and thus this Court has jurisdiction pursuant to § 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.  The court has subject matter jurisdiction over Plaintiff's state law antitrust and tort claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

As set out in Defendants' motion to dismiss, Defendants contend that the Court should decline to exercise supplemental jurisdiction over certain of Plaintiff's state law claims.

### b. Personal Jurisdiction

There are no personal jurisdiction or venue issues for any of the Defendants.

### c. Service

Service of Plaintiff's Complaint has been completed.

## 2. FACT ALLEGATIONS

According to Plaintiff, this action arises from Defendants' alleged anticompetitive and tortious acts directed at, and ultimately succeeding in, driving Plaintiff and other American solar manufacturers out of business.  Plaintiff alleges that Defendants began a coordinated attack to dominate the American solar market through conspiring among themselves and with others to price solar products at below-cost levels and through tortiously interfering with Plaintiff's customer agreements.  Solyndra possessed innovative technology that gave it a competitive advantage in the commercial and industrial rooftop solar market.  To eliminate the threat that Solyndra posed, Defendants had to flood the United States market with their conventional flat photovoltaic solar panels at prices substantially below cost, crippling Solyndra's new technology.  Defendants' conspiracy was successful; as shown by the fact that the cartel, in a relatively short period of time, was able to drive not only Solyndra out of business but a number of other U.S. manufacturers as well.

According to Plaintiff, Defendants have already been found to have illegally dumped solar panels on the United States market and received illegal countervailable subsidies to the injury of

American manufacturers of solar panels.  The International Trade Administration and the Department of Commerce imposed duties of over 31.73% on imports of Chinese-made solar panels.

Plaintiff further alleges that Defendants were aided in their conspiracy by China New Energy Chamber of Commerce, a leading trade association that provided cover for meetings of Defendants' top executives and the specific purpose of which was to facilitate "cooperation and collaborative efforts between the members."  At one of these meetings, Defendants' top executives discussed developing "[h]igh-end dialogue between top leaders of PV enterprises."  Following these key meetings of China New Energy, Defendants agreed to and did export 95% of their production, and prices for solar panels fell in strikingly parallel fashion by 40%, 18%, and 20% respectively.  Defendants were also aided by banks  that loaned Defendants over $17 billion in below-market loans and by polysilicon suppliers , which provided polysilicon at prices unavailable to Solyndra and other American manufacturers.

Plaintiff also alleges multiple instances of Defendants selling their solar panels below their costs.  For example, in early July 2009, Yingli's costs were estimated to be at least $2.52 per watt, while at the same time, Yingli was selling panels for $1.70 per watt.  And, Suntech's costs were reported to be at least $2.31 per watt while customers were reporting that Suntech was selling them panels at prices well below this threshold, according to the Complaint.  These types of prices were described by a leading solar industry analyst as "irrationally low."  These allegations are buttressed by a former employee of Trina who has confirmed that he routinely sold solar panels below-cost in the United States.  In addition, Plaintiff alleges that Suntech's founder and then-CEO admitted that his company was selling solar panels at below-cost prices in order to gain market share.

Plaintiff further alleges that, in addition to the parallel pricing and trade association meetings, Defendants' conspiracy is evidenced by a list of several other "plus factors":

- Suntech's founder and then-CEO publicly admitted in THE NEW YORK TIMES that Suntech was selling solar panes below "the cost of materials, shipping, and assembly . . . *in order to gain market share*."
- Trina's Chairman admitted to engaging in "irrational pricing practices,"

3

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT
Case No. 12-cv-5272 (SBA) (EDL)

- Trina and Yingli share a corporate office in the Cayman Islands.
- Each Defendant sold panels below cost as calculated by Solyndra and third-party analysts *using Defendants' own SEC filings*.
- Defendants slashed their prices by over 60% despite rising demand and less competition due to their anti-competitive behavior, in complete contravention of ordinary economic principles.
- Defendants' sales personnel regularly met, traveled, and socialized together, which provided them an additional opportunity to coordinate their conspiracy.

As a result of Defendants' conspiracy, Plaintiff alleges that it, along with at least a dozen other U.S. solar panel manufacturers, were driven from the U.S. market. Plaintiff further alleges that Defendants have eliminated virtually all innovation and competition from the U.S. market, and have successfully positioned themselves to recoup their losses in the future.

Plaintiff further contends that Defendants tortiously interfered with a number of potentially lucrative and substantial customer agreements. For example, Carlisle Syntec, Inc. ("Carlisle") had an agreement with Plaintiff to purchase approximately $132 million worth of Solyndra's panels, yet because of Defendants' below-cost sales to Carlisle, Plaintiff alleges it lost over $110 million on the Carlisle account. Plaintiff's also allege that its agreement with GeckoLogic GmBH ("GeckoLogic") was likewise interfered with by Defendants—despite an agreement to purchase $111 million worth of panels, because of Defendants' conduct, GeckoLogic purchased only $6.1 million, resulting in a loss of $105 million. Umwelt Sonne Energie GmbH also committed to purchase approximately $50.7 million of panels from Plaintiff, until, according to Plaintiff, Defendants below-cost prices and caused Plaintiff to lose approximately half of the agreed-for sales. Ultimately, Plaintiff alleges that a company that was once named one of the "50 Most Innovative Companies in the World" has been lost for pennies on the dollar due to Defendants' illegal activity.

Defendants deny any liability whatsoever to Plaintiff, and deny that Plaintiff has been injured in any way by the alleged conduct of Defendants, or any of them individually. Specifically, Defendants deny that they have violated the antitrust laws in any way, or engaged in any conspiracy

to price solar panels at below-cost levels. Defendants further deny that they tortiously interfered with Plaintiff's contracts or engaged in any other actionable conduct under California statutory or common law.

## 3. LEGAL ISSUES

Without waiving any right to contest all disputed issues presented in any subsequent pleadings, briefing, or discovery, at this time, the primary disputed legal issues include:

1. Whether Defendants violated Section 1 of the Sherman Act (15 U.S.C. § 1) and the Cartwright Act (Cal. Bus. & Prof. Code § 16700 *et seq.*).
2. Whether Defendants violated Sections 17043 and 17044 of the California Unfair Practices Act (Cal. Bus. & Prof. Code § 17000 *et seq.*).
3. Whether Defendants tortiously interfered with Plaintiff's customer supply agreements.
4. Whether Defendants tortiously interfered with Plaintiff's economic relationships.
5. Whether Plaintiff has stated a claim upon which relief can be granted.
6. Whether Plaintiff has standing to sue or has sustained antitrust injury.
7. Whether Plaintiff's claims are non-justiciable under the political question doctrine.
8. Whether Plaintiff's claims are pre-empted by the federal trade laws.

## 4. MOTIONS

**Motion for Early Discovery**

Plaintiff filed a motion for leave to serve a single document request on December 19, 2012. Defendants filed their response on January 9, 2013, and Plaintiff its reply on January 16. A hearing was held before Magistrate Judge Elizabeth LaPorte on January 29, 2013 (Dkt. 62). At this hearing, Magistrate Judge LaPorte ordered the parties to meet and confer regarding the scope of the documents called for by this document request, and thereafter for Defendants to produce, subject to a stipulated confidentiality order, certain records to Plaintiff that they had previously provided to the ITC and DOC (Dkt. 69). A confidentiality order was entered on March 5, 2013 (Dkt. 73), after which all of the Defendants produced documents.

5
AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT
Case No. 12-cv-5272 (SBA) (EDL)

**Motion to Amend Complaint**

Plaintiff filed an unopposed motion for leave to amend its Complaint on January 25, 2013 (Dkt. 60), which was granted on February 14, 2013 (Dkt. 69). Plaintiff filed its Amended Complaint on February 14, 2013.

**Motion to Dismiss**

Defendants filed a joint motion to dismiss Plaintiff's Amended Complaint on March 8, 2013 (Dkt. 74). Plaintiff filed its opposition thereto on April 12, 2013 (Dkt. 76), and Defendants filed their reply on May 3, 2013 (Dkt. 77). A hearing on the motion to dismiss has been scheduled for June 4, 2013 (Dkt. 71).

<u>Summary of Defendants' Arguments</u>

As set out in the briefing on Defendants' motion to dismiss, Defendants assert that Plaintiff has cobbled together vague, conclusory allegations that rely on nothing more than allegedly parallel pricing or Defendants' shared country of origin to argue that Defendants conspired to charge prices that were too low. Because low prices overwhelmingly benefit consumers, the Supreme Court has repeatedly recognized that allegations of a conspiracy to lower prices are only sufficient when accompanied by both (1) specific allegations regarding the who, what, where, when, and how of an agreement to engage in predatory pricing and (2) a likelihood that defendants can recoup their losses, harming consumers through higher prices in the future. Plaintiff's allegations meet neither test, as set forth in Defendants' motion papers and briefly summarized below, for several reasons.

*First*, Defendants contend that Solyndra has failed adequately to allege predatory pricing, including a complete failure to plead recoupment. Moreover, Plaintiff does not allege market conditions that make recovery of any purported losses possible, let alone probable. Without showing that Defendants engaged in predatory pricing and can recoup any alleged losses, Solyndra has not suffered any antitrust injury and therefore lacks standing to sue.

*Second*, Defendants maintain that Plaintiff fails to provide concrete allegations regarding the content and circumstances of any purported preceding agreement among Defendants, merely alleging "upon information and belief" that unnamed "leaders" met at annual trade

association forums and, thereafter, that prices dropped "uniformly."  Plaintiff consistently relies on such vague and generalized allegations as a simple decline in prices during a time of increased competition in the solar market, an assertion that certain unnamed salespeople "socialized" together, or that two defendants share an address for incorporation in the Cayman Islands.

Defendants further argue that Solyndra has attempted to buttress its Amended Complaint by erroneously relying on—and misinterpreting—the ITC and DOC investigations.  The investigations by the International Trade Administration and the Department of Commerce ("the Investigations") cited by Plaintiff involved fundamentally different inquiries than those involved in this private antitrust matter.  While the antitrust laws are generally concerned with prices that are too high, thereby harming consumers, the trade investigations focus on prices that are too low, thereby harming competitors.  Moreover, the investigations never even found that Defendants priced below their costs; instead, they considered whether Defendants had priced at "less than fair value," which compares the price at which a foreign firm sells a product in the United States to the price charged for a comparable product sold in the foreign firm's domestic market.  And those investigations found that prices fell during a time when competition was increasing in the solar panel market, a finding consistent with healthy price competition.

*Finally*, Defendants maintain that, because Solyndra has failed to plead a Sherman Act violation, its Cartwright Act claim should also be dismissed.  Similarly, without alleging a wrong cognizable under the antitrust laws, Plaintiff's claim for interference with prospective economic advantage fails.  Finally, Defendants respectfully submit that the Court should decline to exercise jurisdiction over Solyndra's other state-law claims, but, should the Court choose to address those claims on the merits, each of them fails for the reasons set out in Defendants' briefing.

In short, Defendants contend that the allegations recited by Plaintiff in the Amended Complaint and repeated here are perfectly consistent with the vigorous competition in the solar panel market and the resulting decline in prices over the past few years, which have benefitted consumers. While Solyndra attempts to blame Defendants for its own financial misfortune, by its own admission, Solyndra entered into a market with numerous existing competitors with the plan to sell

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

solar panels at a premium above its competitors. As the market for solar panels became increasingly competitive in the U.S. and prices declined, Solyndra's premium pricing strategy became even less viable, and, as a result, the company lost significant business opportunities. Defendants assert that, far from stating a claim upon which relief can be granted, Plaintiff's Amended Complaint seeks to condemn under the U.S. antitrust and California competition laws the very behavior those laws are designed to protect and encourage.

<u>Summary of Plaintiff's Arguments</u>

Defendants' motion to dismiss should be denied for at least five reasons:

*First*, Defendants' argument that such a conspiracy is "implausible" ignores: (a) that all Defendants embarked upon a scheme to export more than 95% of their products and flood the U.S. market, despite the desperate need for solar panels in their home country—with none of them pursuing an alternative China market strategy; (b) Defendants' remarkably parallel predatory pricing and identical price movements over time; (c) a Trina executive and whistleblower admitting below-cost sales; (d) Defendants Trina and Yingli sharing a corporate headquarters in the Cayman Islands; (e) Suntech's CEO and Chairman admitting to selling below cost to dominate the U.S. market; (f) U.S. governmental determinations—fully litigated by Defendants—that they dumped solar panels in the U.S. at less than fair value; (g) Defendants' senior executives' participation in trade association meetings with the stated purpose of "coordination and collaboration," and more.

*Second*, Defendants' argument that the Complaint lacks requisite details of the "express agreement" to conspire ignores that the law is plainly to the contrary.

*Third*, Defendants raise a series of straw men—all of which should be flatly rejected. For example, Defendants argue that Solyndra fails to plead "recoupment" of monopoly profits—even though there is no requirement to do so under Section 1 of the Sherman Act or the Cartwright Act. Similarly, Defendants claim that Solyndra's tortious interference claims fail because Solyndra does not allege any "independently wrongful conduct;" yet, Defendants conveniently ignore that they have already been found guilty of dumping below fair market value by both the ITC and DOC, and, separately, that the Complaint charges independent wrongful conduct through violations of the

Sherman Act, the Cartwright Act, and the Unfair Practices Act.

*Fourth*, Defendants argue that Solyndra was a victim of "vigorous competition" and then attempt to argue that there was no antitrust injury as there was allegedly no predation. Such a circular argument necessarily raises factual issues, and further ignores Solyndra's well-pled allegations that Defendants eliminated virtually all competition in the rooftop solar market—with the contemporaneous bankruptcy of more than 10 solar companies while simultaneously growing their market share from a few percentage points to market domination—all on an inferior product.

*Fifth*, Solyndra has adequately pled the existence of a relevant geographic and product market recognized by the market participants, industry analysts, the agencies charged with measuring injury to competition, and more.

## 5. AMENDMENT OF PLEADINGS

Plaintiff filed an unopposed motion for leave to amend its complaint to add additional factual allegations based on the release of the final determination by the International Trade Commission. Plaintiff further reserves the right to seek leave to file a second amended complaint upon the receipt of any motion to dismiss filed by any Defendant, pursuant to Federal Rule of Civil Procedure 15(a)(2), and, if necessary, to seek leave to file a further amendment upon receipt of discovery from Defendants in order to conform the pleadings with the evidence in this matter.

## 6. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines on Electronically Stored information and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in this action.

## 7. DISCLOSURES

Pursuant to stipulation (Dkt. 54), the parties served their Initial Disclosures under Rule 26(a) on February 28, 2013.

## 8. DISCOVERY

### A. Written Fact Discovery

It is Plaintiff's position that Defendants collectively may serve up to 10 interrogatories on Plaintiff, and that each Defendant group may serve up to an additional 10 interrogatories on Plaintiff (i.e., so that Plaintiff will be required to respond to no more than 40 interrogatories during the pendency of the case). Plaintiff may serve up to 40 interrogatories on each Defendant group. In other words, under Plaintiff's proposal, each party or group would be responsible for responding to no more than 40 interrogatories. Suntech Power Holdings Co., Ltd. and Suntech America, Inc. constitute the Suntech Defendant group; Trina Solar Limited and Trina Solar (U.S.), Inc. constitute the Trina Defendant group; and Yingli Green Energy Holding Co. Ltd. and Yingli Green Energy Americas, Inc. constitute the Yingli Defendant group.

It is Defendants' position that Defendants collectively may serve up to 15 interrogatories on Plaintiff, and that each Defendant group may serve up to an additional 10 interrogatories on Plaintiff (i.e., so that Plaintiff will be required to respond to no more than 45 interrogatories during the pendency of the case). Plaintiff may serve up to 25 interrogatories on each Defendant group (i.e. so that Defendants collectively will be required to respond to no more than 75 interrogatories during the pendency of the case).

### B. Oral Fact Discovery

The Parties agree that Defendants collectively may take up to 20 depositions and that Plaintiff may take up to 20 depositions, for a total of 40 depositions. Further, the Parties agree that if the Parties need additional depositions, they may seek leave of the Court.

### C. Scope of Discovery

It is Plaintiff's position, consistent with Magistrate Judge LaPorte's guidance, that certain written fact discovery shall proceed during the pendency of Defendants' forthcoming Motion to Dismiss. In fact, Plaintiff has served one set of requests for production upon each Defendant seeking documents related to the International and Trade Commission and Department of Commerce's dumping investigations. Plaintiff has also served a second set of request for production solely on the

10
AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT
Case No. 12-cv-5272 (SBA) (EDL)

1  Suntech Defendants related to certain corporate organizational matters made relevant by the
2  bankruptcy filing in China of an affiliated entity, Wuxi Suntech Power Holdings Co. Ltd.  In
3  addition to this already served discovery and without prejudice to its rights to formally request
4  discovery of other subjects, at this time, Plaintiff anticipates discovery may be needed on the
5  following additional subjects: Defendants' costs, Defendants' prices, Defendants' sales in the United
6  States market; Defendants' sales to Plaintiff's customers; China New Energy Chamber of
7  Commerce; the International Trade Commission and Department of Commerce investigation into
8  Crystalline Silicon Photovoltaic Cells and Modules from China; communications between
9  Defendants, market intelligence, and market share.

10  Defendants maintain that no additional discovery is necessary while the Motion to Dismiss is
11  pending.  If Plaintiff's Complaint survives Defendants' Motion to Dismiss, Defendants anticipate
12  that discovery may be needed on the following subjects, without prejudice to their rights to formally
13  request discovery relating to other subjects at any time: Solyndra's prices and pricing strategies,
14  Solyndra's business and market strategies, Solyndra' s product design and technology, Solyndra' s
15  sales and customer relations, Solyndra' s financial performance and projections, Solyndra's
16  government assistance and subsidies, and competition in the alleged relevant market.

17  The Parties do not believe that discovery should be conducted in phases.  The Parties agree to
18  produce information in the form that it is usually maintained or in another form that is reasonably
19  usable pursuant to Federal Rule of Civil Procedure 34(e).

20  The parties anticipate meeting and conferring on a potential Stipulated E-Discovery Order
21  after exchanging their Rule 26(a) disclosures and first set of written discovery.  The parties
22  previously consented to service by electronic means of all discovery requests, pleadings, and other
23  papers under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure (*see* Dkt. 63).

24  A protective order, agreed to and stipulated by the parties, was entered by the Court on
25  March 5, 2013 (Dkt. 73).

26  **9.   RELATED CASES**
27  The Parties are unaware of any other related actions.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## 10. RELIEF

Plaintiff seeks money damages, including treble damages, for alleged violations of the antitrust laws and California law. Defendants deny that Plaintiff is entitled to any damages under the antitrust laws and California law, and reserve the right to seek costs.

## 11. SETTLEMENT AND ADR

No settlement discussions have occurred. Pursuant to this Court's order (Dkt. 56), the parties participated in an ADR telephone conference on February 4, 2013 to discuss ADR options (Dkt. 56). The parties agreed that it was premature to discuss ADR options, but further agreed that they were amenable to participating in private or court-supervised mediation at the appropriate time. A follow-up ADR telephone conference has been scheduled for July 10, 2013 at 11:30 a.m. PT.

## 12. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

## 13. OTHER REFERENCES

The Court has referred all discovery disputes to Magistrate Judge Elizabeth D. LaPorte.

## 14. NARROWING OF ISSUES

The Parties believe that it is premature to considering narrowing the issues at this time.

## 15. EXPEDITED TRIAL PROCEDURE

The Parties do not believe that this action is susceptible to an expedited trial procedure under General Order 64.

## 16. SCHEDULING

The Plaintiff proposes the following schedule, subject to the Parties' right to request continuances under reasonable circumstances:

| | |
|---|---|
| Close of Written Fact Discovery | November 8, 2013 |
| Close of Oral Fact Discovery | April 14, 2014 |
| Close of Expert discovery | July 11, 2014 |

| Filing of Defendants' Summary Judgment Motion | August 8, 2014 |
| --- | --- |
| Trial | December 1, 2014 |

The Defendants anticipate that additional time will be required for fact discovery, considering the complexity of the claims and defenses; the fact that many Chinese language documents will need to be translated prior to any review and production; and that many witnesses—of the Parties and third parties—are also located abroad.  Accordingly, Defendants propose the following schedule, subject to the Parties' right to request continuances under reasonable circumstances:

| Close of written fact and oral fact discovery | December 14, 2014 |
| --- | --- |
| Close of expert discovery | April 11, 2015 |
| Filing of Summary Judgment Motions | May 8, 2015 |

**17. TRIAL**

Plaintiff has requested a jury on all issues so triable.  Defendants will request a jury trial on all issues so triable at the appropriate juncture.  Plaintiff expects the trial to last approximately three weeks.  Defendants propose a trial date that is four months after the disposition of the Parties' summary judgment motions, but believe it is premature to estimate the length of the trial.

**18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff filed its Certification of Interested Entities or Persons on October 11, 2012.  There, Plaintiff stated that the creditors of over 2000 claims in the Solyndra LLC bankruptcy proceeding (No. 11-12799 (Bankr. E.D. Del. Sept. 6, 2011)) have either a financial interest in the subject matter in controversy or in a party to the proceeding or a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.

The Yingli Defendant group filed their Certification of Interested Entities pursuant to Civil L.R. 3-16 and Rule 7.1 of the Federal Rules of Civil Procedure on December 5, 2012 (Dkt. 22).  There, the Yingli Defendant group disclosed the following entities as having either (i) a financial interest in the

subject matter in controversy or in a party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Yingli Green Energy (International) Holding Company Limited (sole owner of Yingli Green Energy Americas, Inc.), Yingli Green Energy Holding Company Limited (sole owner of Yingli Green Energy (International) Holding Company Limited), Yingli Power Holding Company Ltd. (owner of approximately 31.8% of Yingli Green Energy Holding Company Limited's outstanding shares on the New York Stock Exchange), and the family trust of Mr. Liansheng Miao, CEO and chairperson of Yingli Green Energy Holding Company Limited's board of directors (sole owner of Yingli Power Holding Company Ltd.).

The Trina Defendant group filed their Certification of Interested Entities pursuant to Civil L.R. 3-16 and Rule 7.1 of the Federal Rules of Civil Procedure on December 21, 2012 (Dkt. 29). The Trina Defendant group disclosed the following entities as having either (i) a financial interest in the subject matter in controversy or party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Trina Solar (U.S.) Holding Inc. (sole owner of Trina Solar (U.S.) Inc.), Trina Solar (Switzerland) Ltd. (sole owner of Trina Solar (U.S.) Holding Inc.), Trina Solar (Luxembourg) Holdings S.A.R.L. (sole owner of Trina Solar (Switzerland) Ltd.), Trina Solar (Singapore) Pte. Ltd. (sole owner of Trina Solar (Luxembourg) Holdings S.A.R.L.).

The Suntech Defendant group filed their Certification of Interested Entities pursuant to Civil L.R. 3-16 and Rule 7.1 of the Federal Rules of Civil Procedure on January 25, 2013 (Dkt. 59). There, the Suntech Defendant group disclosed the following entities as having either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Suntech Holdings as owner of Suntech America; D&M Technologies Limited ("D&M"), a British Virgin Islands Company, as owner of approximately 29.4% of Suntech Holdings' outstanding shares; the family trust of Dr. Zhengrong Shi as owner of D&M; Dr. Zhengrong Shi as the sole director of D&M on all Suntech Holdings' matters requiring shareholder approval.

**19. OTHER**

The Parties reserve the right to modify and/or limit any of the aforedescribed agreements as warranted by the circumstances.

Dated:  May 8, 2013                              Respectfully submitted,

SOLYNDRA LLC

By:   /s/W. Gordon Dobie

W. Gordon Dobie (admitted *pro hac vice*)
wdobie@winston.com
William C. O'Neil (admitted *pro hac vice*)
woneil@winston.com
Kathryn A. Wendel (admitted *pro hac vice*)
kwendel@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: 312-558-5600
Fax: 312-558-5700

Robert B. Pringle
rpringle@winston.com
Eric E. Sagerman
esagerman@winston.com
101 California Street
San Francisco, California 94111
Tel: 415-591-1000
Fax: 415-591-1400


SUNTECH POWER HOLDINGS CO. LTD.

By:   /s/James Donato

James Donato
jdonato@shearman.com
Mikael A. Abye
maybe@shearman.com
Four Embarcadero Center, Suite 3800
San Francisco, California 64111
Tel: 415-616-1100
Fax: 415-616-1199

SUNTECH AMERICA, INC.

By:   /s/James Donato

James Donato
jdonato@shearman.com
Mikael A. Abye
maybe@shearman.com
Four Embarcadero Center, Suite 3800
San Francisco, California 64111
Tel: 415-616-1100
Fax: 415-616-1199

TRINA SOLAR LIMITED

By:   /s/Eliot A. Adelson

Eliot A. Adelson
Eliot.adelson@kirkland.com
555 California Street
San Francisco, California 64140
Tel: 415-439-1400
Fax: 415-439-1500

Daniel E. Laytin
dlaytin@kirkland.com


TRINA SOLAR (U.S.), INC.

By:   /s/Eliot A. Adelson

Eliot A. Adelson
Eliot.adelson@kirkland.com
555 California Street
San Francisco, California 64140
Tel: 415-439-1400
Fax: 415-439-1500

Daniel E. Laytin
dlaytin@kirkland.com


YINGLI GREEN ENERGY HOLDING CO. LTD.

By:   /s/James Kreissman

James Kreissman
jkreissman@stblaw.com
2475 Hanover Street, Palo Alto, California 94304
Tel: 650-251-5000
Fax: 650-251-5002

Matthew J. Reilly (*pro hac vice*)
matt.reilly@stblaw.com

16
AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT
Case No. 12-cv-5272 (SBA) (EDL)

YINGLI GREEN ENERGY AMERICAS, INC.

By:   /s/James Kreissman

James Kreissman
jkreissman@stblaw.com
2475 Hanover Street
Palo Alto, California 94304
Tel: 650-251-5000
Fax: 650-251-5002

Matthew J. Reilly (*pro hac vice*)
matt.reilly@stblaw.com

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the Northern District of California's General Order No. 45, Section X(B) and Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from Plaintiff's counsel W. Gordon Dobie, William C. O'Neil, Kathryn Wendel, Robert B. Pringle and Eric E. Sagerman and Defendants' counsel Matthew J. Reilly, James Donato, Mikael Abye, Eliot A. Adelson, and Daniel E. Laytin.

Dated: May 8, 2013				SIMPSON THACHER & BARTLETT LLP

						*/s/ James Kreissman*

						2475 Hanover Street
						Palo Alto, California 94304
						Telephone: (650) 251-5000
						Facsimile: (650) 251-5002

						*Attorney for Defendants*
						Yingli Green Energy Holding Co. Ltd. and
						Yingli Green Energy Americas, Inc.