KIRKLAND & ELLIS LLP
Eliot A. Adelson (SBN 205284)
555 California Street
San Francisco, California 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
email: eadelson@kirkland.com

James H. Mutchnik, P.C. (admitted *pro hac vice*)
Daniel E. Laytin, P.C. (admitted *pro hac vice*)
James R.P. Hileman (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
email: jmutchnik@kirkland.com
email: dlaytin@kirkland.com
email: jhileman@kirkland.com

*Attorneys for Defendants*
*Trina Solar Limited*
*Trina Solar (U.S.), Inc.*

[Counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE SOLYNDRA RESIDUAL TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, R. TODD NEILSON<br><br>Plaintiff,<br><br>vs.<br><br>SUNTECH POWER HOLDINGS CO., LTD., SUNTECH AMERICA, INC., TRINA SOLAR LIMITED, TRINA SOLAR (U.S.), INC., YINGLI GREEN ENERGY HOLDING COMPANY LIMITED, YINGLI GREEN ENERGY AMERICAS, INC.,<br><br>Defendants. | **Case No. 12-cv-5272 (SBA) (EDL)**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL**<br><br>Before the Hon. Elizabeth D. Laporte<br>Date: November 25, 2014<br>Time: 9:00 a.m.<br>Courtroom: E (15th Floor) |

1

## NOTICE OF MOTION AND MOTION TO COMPEL

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on November 25, 2014, at 9:00 a.m., or as soon thereafter as

4   the matter may be heard, in the United States District Court for the Northern District of California,

5   Courtroom E – 15th Floor, located at 450 Golden Gate Avenue, San Francisco, California,

6   defendants Trina Solar Limited; Trina Solar (U.S.), Inc.; Yingli Green Energy Holding Co. Ltd.;

7   Yingli Green Energy Americas, Inc; and Suntech America, Inc. ("Defendants"), through their

8   undersigned counsel, will and hereby do, move the Court to issue an order compelling plaintiff

9   Solyndra Residual Trust ("Solyndra") to produce any and all documents in its possession, custody,

10  or control responsive to Defendants' 21st request for production of documents.

11         This motion is based on this Notice of Motion, the supporting Memorandum of Points and

12  Authorities, the Declaration of James R.P. Hileman filed herewith and exhibits attached thereto, the

13  complete files and records in this action, and such additional material and arguments as may be

14  considered at the hearing.

15

### STATEMENT OF ISSUE TO BE DECIDED

16     1.  Whether Solyndra must produce to Defendants the documents that it produced to government

17         agencies related to its financial condition when the reason for its business failure is at issue in

18         this case.

19

20

21

22

23

24

25

26

27

28

---

1

## SUMMARY OF ARGUMENT

2       The Solyndra Residual Trust ("Solyndra") alleges that Defendants owe it more than $1.5

3  billion for running Solyndra out of business.  Accordingly, the reasons for Solyndra's failure and the

4  value of its business are key issues in this case.  Several government entities have already

5  investigated these very same issues and Solyndra collected, reviewed, and produced documents in

6  those investigations.  Yet, Solyndra refuses to produce these relevant, pre-packaged documents to

7  Defendants for a variety of shifting reasons—none which have merit.  Any burden associated with

8  gathering the materials was incurred at the time of their original production.  Any claim of privilege

9  was waived when the documents were produced to the government.  And the argument that

10  producing materials to a grand jury somehow shields them from production in a civil matter has been

11  considered and rejected by this Court.  Because the documents at issue are relevant, non-privileged

12  materials that can be produced with very little burden, Defendants respectfully request that the Court

13  compel their production.

14       A.       **Background**

15       Solyndra alleges that Defendants drove it into bankruptcy by pricing their solar panels too

16  low.  (Am. Cmplt. ¶ 67, Dkt. 70.)  Solyndra contends that it "possessed innovative technology that

17  gave it a competitive advantage" but that Defendants' purported conspiracy drove Solyndra out of

18  business.  (*Id.* ¶ 1.)  Solyndra seeks over $1.5 billion in damages based on the loss of "value of its

19  business" and the equity invested in the company.  (*Id.* ¶ 217.)

20       Defendants vehemently dispute these assertions.  Not only was there no conspiracy or illegal

21  pricing, but Solyndra's failure was the result of its own commercially inferior product and corporate

22  and financial mismanagement.  (*See, e.g.*, Rule 26(f) Report, Dkt. 63 at 4 ("While Solyndra attempts

23  to blame Defendants for its own financial misfortune, by its own admission, Solyndra entered into a

24  market with numerous existing competitors with the plan to sell solar panels *at a premium* above its

25  competitors.  As the market for solar panels became increasingly competitive in the U.S. and prices

26  declined, Solyndra's premium pricing strategy became even less viable and, as a result, the company

27  lost significant business opportunities.")); *see also* Carol D. Leonnig,  *Solyndra employees: Company*

28  *suffered from mismanagement, heavy spending*, WASHINGTON POST, Sept. 21, 2011, available at

1  http://www.washingtonpost.com/politics/solyndra-employees-company-suffered-from-

2  mismanagement-heavy-spending/2011/09/20/gIQAMHC3lK_story.html).

3  Various government entities have launched investigations into Solyndra's collapse and its

4  financial condition.  As Solyndra's Trustee explained in his March 2012 Report:[1]

5  [O]n September 8, 2011, the Federal Bureau of Investigation ("FBI"), acting in

6  concert with the Department of Energy Office of Inspector General ("OIG"),

7  executed search warrants at the Debtors' headquarters in Fremont, California and the

8  United States Attorney commenced a criminal investigation.  In addition to the

9  Federal criminal investigation, pre-petition, Solyndra was also subject to a

10  Congressional investigation that escalated upon the commencement of these cases.

11 (Report of R. Todd Neilson, Chief Restructuring Officer at 1, March 21, 2012, Excerpt at Ex. 1.)

12  It is clear that Solyndra's financial state and the reasons for its collapse were at issue in, if

13  not at the fore of, these government investigations.  The New York Times reported that "[t]wo

14  committees of Congress, the Department of Energy's inspector general and the Department of

15  Justice . . . investigat[ed] what went wrong in the Solyndra case."  (Eric Lipton, *In Rush to Assist a*

16  *Solar Company, U.S. Missed Signs*, N.Y. TIMES, Sept. 22, 2011, available at

17  http://www.nytimes.com/2011/09/23/us/politics/in-rush-to-assist-solyndra-united-states-missed-

18  warning-signs.html?pagewanted=all.)  And a U.S. House of Representatives Committee Staff Report

19  found, among other things, that "[t]he evidence gathered during the course of the Committee's

20  investigation conclusively demonstrates that . . . the financial information that Solyndra submitted in

21  its [loan] application to DOE was based on faulty assumptions that . . . should have raised alarms

22  about the company's viability" and that "Solyndra's financial condition continued to weaken after it

23  received the DOE loan guarantee."  (*See, e.g.*, *The Solyndra Failure*, Majority Staff Report,

24

[1] Solyndra's Trustee—the nominal Plaintiff in this litigation—issued a Report in March 2012 analyzing *inter alia* Solyndra's "(a) solar technology and products; (b) external environment and market conditions; (c) corporate structure; (d) Fab 1 manufacturing facility; (e) customer agreements; (f) $535 million loan guarantee from the U.S. Department of Energy ("DOE") for the Fab 2 manufacturing facility; (g) historical financial statements; (h) financial forecasts and projections; (i) sources and uses of cash; and (j) employee compensation."  (Report of R. Todd Neilson, Chief Restructuring Officer at 3, March 21, 2012, Excerpt at Ex. 1)

committee on Energy and Commerce, H.R. 112th Congress, August 2, 2012 at 3-4, Excerpt at Ex. 2.)

Indeed, in his Report, Solyndra's Trustee cites the government investigations as the catalyst for why he was charged with investigating Solyndra's finances:

> In light of the Federal criminal investigation and ongoing Congressional investigation, in addition to the customary roles for a [Chief Restructuring Officer], the CRO and the Subcommittee agreed that the CRO would act in an independent capacity in determining if any improprieties had occurred with respect to the Debtors' finances.

(Report of R. Todd Neilson, Chief Restructuring Officer at 1, March 21, 2012, Excerpt at Ex. 1 (emphasis added).)

Against this backdrop, Defendants served their First Set of Requests for Production on Solyndra on July 7. Defendants' Request No. 21 requested documents and communications relating to these government investigations into Solyndra or its activities:

> 21.    All documents and communications relating to any government investigation into You or Your activities by the Department of Justice, Federal Bureau of Investigation, or other federal, states or local government, and any segment, instrumentality, or agency thereof, including but not limited to the United States House of Representatives Committee on Energy and Commerce investigation and In the Matter of the Search of Solyndra, Case No. 4-11-71012 and USAO No. 2011R01816.

(See Defendants' First Set of Requests for Production to Plaintiff R. Todd Neilson, As Liquidating Trustee on Behalf of the Solyndra Residual Trust, , RFP No. 21, July 7, 2014.) Solyndra responded on August 7 and objected to producing any documents regarding government investigations based on relevance, overbreadth, burden, ambiguity, and privilege:

> RESPONSE:  Solyndra objects to this Request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Solyndra further objects to the terms "government investigation" and "segment,

1    instrumentality, or instrumentality" as vague, ambiguous and subject to multiple

2    meanings.  Solyndra also objects to this Request to the extent that it seeks information

3    protected from disclosure by the attorney-client privilege and/or work product

4    protection.

5        (Plaintiff's Responses and Objections to Defendants' First Set of Requests for Production to

6    Plaintiff R. Todd Neilson, As Liquidating Trustee on Behalf of the Solyndra Residual Trust,

7    Response to RFP No. 21, August 8, 2014, Ex. 3.)  The parties then met and conferred telephonically

8    on August 20, September 26, and October 3 and exchanged multiple emails regarding Solyndra's

9    objections and the parties' disagreements.  (Email Correspondence, Ex. 4.)  Through these efforts,

10   Defendants narrowed the scope of their request to seek only those documents produced to or

11   collected by a government entity in the course of these investigations—that is, only the documents

12   already presumably reviewed and neatly-packaged.[2]  (10/1/14 Lerner email, Ex. 4.)  Still, Solyndra's

13   position remains that it "will not produce any government investigation documents."   (10/02/14

14   O'Neil email, Ex. 4.)  The parties reached an impasse and this motion followed.

15       **B.**    **Argument**

16       Under the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter

17   that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at

18   the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

19   evidence."  Fed. R. Civ. P. 26(b).  When weighing whether the benefit of discovery outweighs its

20   burden, it is appropriate to consider "the needs of the case, the amount in controversy, the parties'

21   resources, the importance of the issues at stake in the action, and the importance of the discovery in

22   resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

23       Defendants seek production of documents Solyndra and its counsel already collected during

24   the course of various government investigations.  This discovery plainly is relevant to defenses and

25   issues in this case; indeed these documents may be the *most* fertile source for information relevant to

26   the Solyndra's failure.  And producing these documents poses minimal if any burden, since they

27

28   [2]   Defendants do not seek documents produced to or collected by a government entity to the extent
     they are publicly available or otherwise equally accessible to the Defendants as to Plaintiff.

1    presumably already have been reviewed and compiled.  Solyndra's objections are without merit.

2                1.    **Documents Solyndra Produced in the Course of Government**

3                      **Investigations Plainly are Relevant and Discoverable.**

4            As set out above, documents produced in the course of the various government investigations

5    likely contain key information about Solyndra's finances and the reasons for its collapse.  The

6    Committee Report on the Congressional investigation makes clear that "[t]he evidence gathered

7    during the course of the Committee's investigation" was related to Solyndra's financial demise.  (*See*

8    *The Solyndra Failure*, Majority Staff Report at 3, August 2, 2012 Excerpt at Ex. 2.)  Likewise, other

9    investigations reportedly have centered on possible accounting fraud and inaccuracy of Solyndra's

10   financial representations.  (*See FBI Said to Be Probing Solyndra for Possible Account Fraud*,

11   BLOOMBERG, Sept. 29, 2011, available at http://www.bloomberg.com/news/2011-09-29/fbi-said-to-

12   be-probing-solyndra-for-possible-accounting-fraud.html.)

13           Those *precise* issues are relevant to this case.  Solyndra seeks to blame its failure on a non-

14   existent conspiracy among the Defendants; Defendants respond that Solyndra caused its own

15   failure—a viable defense meriting discovery.  *See Addamax Corp. v. Open Software Found., Inc.*,

16   152 F.3d 48, 53–54 (1st Cir. 1998) ("[M]ismanagement is certainly relevant to the factual question

17   whether the antitrust violation had such an effect or whether the plaintiff is entirely the cause of its

18   own failure.") (citation omitted).  Likewise, the value of Solyndra's business—and thus its financial

19   condition—is directly relevant to Solyndra's claim for damages.  *See ILC Peripherals Leasing Corp.*

20   *v. Int'l Bus. Machines Corp.*, 458 F. Supp. 423, 435 (N.D. Cal. 1978) *aff'd sub nom. Memorex Corp.*

21   *v. Int'l Bus. Machines*, 636 F.2d 1188 (9th Cir. 1980) (rejecting damages theory that did not take into

22   account company's mismanagement and financial situation).   Thus, documents collected and

23   produced in government investigations into Solyndra's mismanagement and financial condition are

24   directly relevant to this case—more than sufficient to meet the standard that Requests be "reasonably

25   calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Prohibiting

26   defendants from obtaining these documents would impermissibly hinder them from defending

27   themselves against Solyndra's unsupported claim for $1.5 billion dollars.

28           In fact, this set of documents may be one of the most fertile grounds for discovery in the

case.  The parties have proposed search terms to attempt to capture key documents responsive to Defendants' other RFPs that relate to Solyndra's financial collapse and condition.  However, such documents are difficult to capture with search terms alone because of the variety of documents that reflect a company's financial picture and because numerical documents containing financial information often do not contain search terms that would identify the document as responsive.  In light of this difficulty, compilations of relevant documents that already have been reviewed and collected are likely to advance discovery significantly and decrease the burden for all parties.

2.   <strong>None of Solyndra's objections has merit.</strong>

Each of the objections stated in Solyndra's Objections and Responses and during meet-and-confer discussions ring hollow.

*First*, Solyndra's Objections and Responses include a boilerplate privilege objection.  To be clear, Defendants are not seeking privileged documents.  However, to the extent Solyndra produced privileged documents to the government, the act of production waived any privilege Solyndra once held.  *See, e.g.*, *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127-28 (9th Cir. 2012) (rejecting "selective waiver" theory that would allow documents to remain privileged despite production to the government).  If Solyndra contends otherwise, it should produce documents for which it is not asserting privilege and identify in a privilege log those for which it is, pursuant to Rule 26(b)(5) and Judge Laporte's Standing Order re: Discovery Procedures, so that the parties can meaningfully meet and confer regarding any privilege issues.

*Second,* as explained above, the burden and cost for Solyndra to produce a second set of the same documents it already has collected and produced to the government is negligible.  On this score, Solyndra's current position is also 180-degrees from the position it took earlier in this case.  In December 2012, Solyndra asked for early discovery of documents Defendants had produced in a trade investigation.  It argued that its request for documents produced in a government investigation was "narrow in scope" and "minimally burdensome" because they were already reviewed and produced.  (Pl.'s Mot. for Leave from Rule 26(f) to Serve a Single Document Request, Dkt. 25 at 3.)  Those same principles now apply against Solyndra.  Defendants' request for the government investigation productions is narrowly tailored to identify relevant material and the burden of

producing documents that have already been *collected* and *produced* is minimal.[3] Weighed against the centrality of the documents sought and the amount of damages Solyndra seeks, Solyndra's burden argument fails.

**Third**, Solyndra has argued that Defendants' request for documents produced in the course of government investigations is an attempt to malign Solyndra with the taint of government investigations. This argument is a red herring that fails for multiple reasons. First and foremost, Defendants seek only documents that Solyndra created in the ordinary course of Solyndra's business and then subsequently produced to the government, not documents reflecting the process or reasons behind the government investigations or their findings.

There is also significant irony in Solyndra claiming undue prejudice where it sought the same variety of documents from Defendants, and where its entire lawsuit attempts to shoehorn the findings of a government trade investigation into a civil antitrust action, despite fundamental differences between the two. *See, e.g.*, Harvey M. Applebaum, *The Interface of the Trade Laws and the Antitrust Laws*, 6. Geo. Mason. L. Rev. 479, 482–85 (1998). Moreover, to the extent any documents unduly prejudice Solyndra when compared with their probative value, that generally is an inquiry for admissibility—not discoverability. *See* Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); *see also Aguilar v. Cnty. of Fresco, Cal.*, No. 1:08-cv-1202 AWIGSA, 2009 WL 3617984, at *6 (E.D. Cal. Oct. 29, 2009) ("Issues regarding the admissibility of evidence because of its prejudicial effect is an issue to be raised at trial pursuant to Fed. R. Evid. 403. The discovery rules explicitly provide that discoverable information need not be admissible at trial . . . ."). If the documents are relevant to a party's defenses, they are discoverable.

**Finally,** Solyndra argues that Defendants' "request for documents produced by Solyndra during the criminal investigation invades Rule 6(e) related to the secrecy of the grand jury." (10/3/14 O'Neil email, Ex. 5.) To begin with, this argument against production relates only to those documents produced to the grand jury—not the other investigations. In any event, Solyndra's

---

[3] In addition, Solyndra is not a going concern, so the company itself is not inconvenienced or burdened by Defendants' requests.

1    misguided argument apparently is premised on a single unreported case reflecting a minority view

2    contrary to the one that governs in this Circuit and District.  (*See id.*, attaching *In re Sulfuric Acid*

3    *Antitrust Litig.*, No. 1536, 2004 WL 769376 (N.D. Ill. Apr. 9, 2004).)

4         As a threshold and dispositive matter, Solyndra is not among those categories of persons or

5    entities to whom Rule 6(e) even applies.  The Rule specifies that the duty of secrecy attaches only to:

6    a grand juror, an interpreter, a court reporter, an operator of a recording device, a person who

7    transcribes recorded testimony, an attorney for the government, and other government personnel.

8    *See* Fed. R. Crim. P. 6(e)(2)(B).  And it specifically states that "[n]o obligation of secrecy may be

9    imposed on any person except in accordance with Rule 6(e)(2)(B)."  Fed. R. Crim. P. 6(e)(2)(A); *see*

10   *also Oracle Corp. v. SAP AG*, 566 F. Supp. 2d 1010, 1011 (N.D. Cal. 2008) ("Witnesses are not

11   under the obligation of secrecy.").  The Court need go no further to reject Solyndra's argument.

12        Beyond the fact that Solyndra is not among those with a duty of secrecy, Ninth Circuit law

13   holds that civil discovery of documents produced to grand juries is permitted except in the "rare and

14   unusual case" where production would disclose the grand jury's deliberative process.  *See United*

15   *States v. Dynavac, Inc.*, 6 F.3d 1407, 1411-12 & n.2 (9th Cir. 1993) (disclosure permitted if "a

16   document is sought for its own sake rather than to learn what took place before the grand jury, and if

17   its disclosure will not compromise the integrity of the grand jury process . . . ."); *Oracle Corp.*, 566

18   F. Supp. 2d at 1013 ("Defendants' argument does not account for the cases in which courts have

19   permitted civil discovery of documents produced to grand juries without evident harm to the grand

20   jury process.").  Solyndra has not provided any basis to suggest that this is such a "rare and unusual

21   case."  Its grand jury secrecy argument is inapposite and should be rejected.

22        **C.     Conclusion**

23        For the foregoing reasons, the Court should grant Defendants' motion to compel and order

24   Solyndra to produce documents it already has collected and produced to the government in the

25   course of the various investigations into Solyndra's failure and financial condition.

26

27

28

1                                    Respectfully Submitted,

2    Dated:  October 20, 2014            KIRKLAND & ELLIS LLP

3

4                                   By:   */s/ James R.P. Hileman*

Daniel E. Laytin, P.C. (admitted *pro hac vice*)

5                                   James Mutchnik (admitted *pro hac vice*)

James R.P. Hileman (admitted *pro hac vice*)

6                                   300 North LaSalle

Chicago, IL 60654

7                                   Tel: (312) 862-2000

Fax: (312) 862-2200

8                                   Eliot A. Adelson

555 California Street

9                                   San Francisco, California 64140

Tel: 415-439-1400

10                                 Fax: 415-439-1500

11                                 *Counsel for Trina Solar Limited and Trina Solar (U.S.), Inc.*

12                                 SHEARMAN & STERLING LLP

13                                 By:   */s/ Mikael A. Abye*

14                                 Mikael A. Abye

Four Embarcadero Center, Suite 3800

15                                 San Francisco, California 64111

Tel: 415-616-1100

16                                 Fax: 415-616-1199

17                                 *Counsel for Defendant Suntech America, Inc.*

18                                 SIMPSON THACHER & BARTLETT LLP

19                                 By:   */s/ James Kreissman*

20                                 James Kreissman

2475 Hanover Street

21                                 Palo Alto, California 94304

Tel: 650-251-5000

Fax: 650-251-5002

22                                 Matthew J. Reilly (admitted *pro hac vice*)

23                                 Michael J. Garvey (admitted *pro hac vice*)

1155 F Street, N.W.

24                                 Washington, DC 20004

Tel: 202-636-5500

25                                 Fax: 202-636-5502

26                                 *Counsel for Defendants Yingli Green Energy Holding Co. Ltd. and Yingli Green Energy Americas, Inc.*

27

28

1

## ATTESTATION OF CONCURRENCE IN FILING

2      Pursuant to the Northern District of California's Local Rule 5-1(i)(3), I attest that

3  concurrence in the filing of this document has been obtained from each of the other signatories.

4

5  Dated: October 20, 2014                    KIRKLAND & ELLIS LLP

6

7                                              /s/ James R.P. Hileman

8                                             James R.P. Hileman
                                              300 North LaSalle
9                                             Chicago, IL 60654
                                              Tel: (312) 862-2000
10                                            Fax: (312) 862-2200
                                              *Counsel for Trina Solar Limited and Trina Solar (U.S.),*
11                                            *Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28