KIRKLAND & ELLIS LLP
Eliot A. Adelson (SBN 205284)
555 California Street, 27th Floor
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
email: eadelson@kirkland.com

James H. Mutchnik, P.C. (admitted *pro hac vice*)
Daniel E. Laytin, P.C. (admitted *pro hac vice*)
James R.P. Hileman (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
email: jmutchnik@kirkland.com
email: dlaytin@kirkland.com
email: jhileman@kirkland.com

*Attorneys for Defendants*
*Trina Solar Limited*
*Trina Solar (U.S.), Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE SOLYNDRA RESIDUAL TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, R. TODD NEILSON<br><br>Plaintiff,<br><br>vs.<br><br>SUNTECH POWER HOLDINGS CO., LTD., SUNTECH AMERICA, INC., TRINA SOLAR LIMITED, TRINA SOLAR (U.S.), INC., YINGLI GREEN ENERGY HOLDING COMPANY LIMITED, YINGLI GREEN ENERGY AMERICAS, INC.,<br><br>Defendants. | **Case No. 12-cv-5272 (SBA) (EDL)**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**<br><br>Before the Hon. Elizabeth D. Laporte<br>Date: November 25, 2014<br>Time: 9:00 a.m.<br>Courtroom: E (15th Floor) |

# INTRODUCTION

Solyndra is attempting to hold its competitors liable for Solyndra's own failings. As a result, Solyndra's financial condition is central to causation and damages. Contrary to Solyndra's unsubstantiated assertion, the government investigations—which focused on whether Solyndra misrepresented its financial condition to the Federal Government—examined Solyndra's financial condition and the reasons for Solyndra's failure. In addition, Solyndra's privilege and burden arguments are unfounded. Solyndra waived any privilege when it produced these documents to the government, but, even if it had not, Solyndra has elected to bring an antitrust claim seeking from Defendants damages of over $1.5 billion, including trebling—thus any need to conduct a privilege review is a normal consequence of Solyndra's decision to bring this litigation, and does not justify its position that these documents should be shielded from discovery. In sum, Solyndra should produce the documents it already has collected and produced in government investigations.

### A. The Investigations Center on Solyndra's Financial Condition.

A primary issue in this case is why Solyndra failed. Solyndra alleges that defendants engaged in a low-price conspiracy that drove it out of business, but defendants submit that Solyndra's failure is due to its inability to compete in the marketplace and corporate mismanagement—as evidenced by Solyndra's weak and perpetually deteriorating financial condition. Solyndra's finances are also relevant to the issue of damages, since Solyndra seeks compensation for what it claims to be the value of its business. For these reasons, defendants sought documents Solyndra produced to the government in its investigations into Solyndra, which examined Solyndra's financial condition.

Solyndra does not and cannot dispute that its financial condition is relevant to the issues in this litigation. Rather, Solyndra argues that the documents it submitted to the government are not related to its financial condition at all—that "the focus of [the government] investigations is Solyndra's loan application to the Department of Energy." (Resp. at 1.) This characterization understates the scope of the government investigations. Indeed, Solyndra's Chief Restructuring Officer ("CRO") himself cites the investigations as the motivating reason for why the CRO was charged with determining "*if any improprieties had occurred with respect to the Debtors' finances.*"

(Mem. at 4, citing Report of R. Todd Neilson, Chief Restructuring Office at 1, March 21, 2012, Excerpt at Ex. 1 (emphasis added).) The CRO thus properly understood the investigations to implicate the entirety of Solyndra's finances, not merely the isolated issue of Solyndra's loan application.

In addition, the issues surrounding Solyndra's loan application overlap significantly with its financial condition and the reasons for its failure. In order to review Solyndra's loan applications, the investigations examined the *true nature* of Solyndra's finances. As the House Committee Report illustrates, Solyndra's financial demise and its loan application are intertwined: "A review of Solyndra's financial models and DOE documents by a Certified Public Accountant detailed to the Committee reveals a number of problems and irregularities with Solyndra's financial information that DOE either ignored or did not recognize in its push to award a loan guarantee to the company." (*The Solyndra Failure*, Majority Staff Report, Committee on Energy and Commerce, H.R. 112th Congress, August 2, 2012 at 132–33, Excerpt at Ex. 6.) The Report likewise found that:

- "Some of the assumptions and other estimates in Solyndra's financial models appear to be incorrect, incomplete, or unrealistic";
- "[T]he revenue and profitability projections contained in Solyndra's application were also unrealistic";
- "Solyndra's models also appeared to have understated some projected expenses"; and that
- "A closer look at the financial information of the Solyndra parent and project companies should have revealed or, at the least, prompted further due diligence of the company's financial models and whether Solyndra would be able to repay the loan guarantee."

(*Id.* at 132–33.)[1]

---

[1] Indeed, one of the articles that Solyndra relies on in its opposition explains that "[t]he Federal Bureau of Investigation launched a probe into whether Solyndra executives *had fully disclosed the company's business situation* while applying for the government loan." (Dan Levine, *Exclusive: Criminal charges against Solyndra founder are unlikely – sources*, REUTERS, July 11, 2013, available at http://www.reuters.com/article/2013/07/11/us-solyndra-probe-charges-idUSBRE96A12H20130711 (emphasis added).) Any investigation into whether Solyndra was credit-worthy must examine Solyndra's financial condition and the value of its business.

Against this backdrop, it is difficult to see how the documents produced by Solyndra to the government contain much *besides* documents relevant to Solyndra's financial condition and the reasons for its failure, and thus to this case. Solyndra does not identify any category of document produced to the government that would not also be relevant here.

### B. The Fact that Solyndra is Producing Other Relevant Documents does not Permit it to Withhold the Government Investigation Documents.

Solyndra argues that it has agreed to produce certain documents within the sets compiled and produced in the course of the government investigations—documents responsive to defendants' *other* Requests for Production—so it should not have to produce the complete set of what was produced to the government. (Resp. at 3–4.) But as explained above, the overwhelming majority of documents produced to the government are relevant. The discovery rules do not permit Solyndra to withhold a broader set of relevant and responsive documents simply because some documents within that set will be captured by search terms or otherwise identified for production. And as explained in defendants' opening brief, search terms are an imperfect proxy for the type of financial information that will be central to defendants' defense, whereas the collection of documents produced to the government is likely to contain a significant amount of relevant financial information.

Solyndra understands this point. In moving for expedited discovery to obtain documents that Defendants produced during the ITC and DOC trade investigations, it took a contradictory stance:

> Solyndra seeks the very same documents that Defendants submitted in the U.S. Government Actions during the investigation of the same claims. Defendants would have this Court believe that they submitted irrelevant and privileged information in the U.S. Government Actions, even when an adverse finding could cost Defendants millions of dollars . . . .

(Pl.'s Reply in Supp. of its Mot. for Leave to Serve Early Disc. Req., Dkt. 45 at 7.) Solyndra's footnoted *ipse dixit* assertion that the ITC and DOC trade investigations "were much more closely aligned with the issues in this case than the government investigations" into Solyndra (Resp. at 7 n.1) is simply incorrect. The differences between this case and the ITC and DOC trade

investigations are pronounced—as recently underscored by an opinion dismissing identical antitrust claims brought by Solyndra's counsel in a parallel proceeding.[2] *See Energy Conversion Devices Liquidation Trust v. Trina Solar Limited et al.*, Case No. 13-14241, Opinion and Order Granting Defs.' Joint Mot. to Dismiss Pl.'s Compl., Dkt. 40 at 8 n.2 (E.D. Mich. Oct. 31, 2014), Ex. 7. There, the Court explained that "the Department of Commerce's finding that Defendants dumped product at less than fair value is not equivalent to a finding of below-cost pricing." *Id.* In contrast, the government investigations into Solyndra's financial condition dovetail closely with Defendants' defense that Solyndra failed not because of any conspiracy but because it was ill-equipped from a technical and financial standpoint to compete in the solar marketplace and suffered from severe financial mismanagement.

The central point is this: the government investigation documents are relevant, and their selective production is inappropriate.

### C. Solyndra's Burden and Privilege Arguments are Unavailing.

Solyndra's response raises a new argument that it did not raise in any meet and confer—that reviewing the government-produced documents for privilege would pose an undue burden in light of the Federal Rule of Evidence 502(d) orders issued in the criminal investigations. (Resp. at 6–7.) For a number of reasons, this argument fails.

*First*, the argument has no bearing on the congressional inquiry and provides no basis for

---

[2] As the Court is aware, Solyndra's counsel also represents a second solar panel manufacturer, Energy Conversion Devices, in a substantively identical antitrust lawsuit brought in the Eastern District of Michigan. That case has been dismissed with prejudice based on failure to plead recoupment. *See id.* at 10–13 ("The logic for [a recoupment] requirement applies with equal force to claims brought under § 1 or § 2. In *Brooke Group*, the Supreme Court explained that below-cost pricing without recoupment—'unsuccessful predation'—would generally be a boon to consumers . . . . Conversely, there is little fear that dismissing a predatory pricing conspiracy for failure to allege recoupment would encourage such conspiracies because '*successful* predatory pricing conspiracies involving a large number of firms can be identified and punished once they succeed, since some form of minimum price-fixing agreement would be necessary in order to reap the benefits of predation' . . . . [N]ot only has Plaintiff failed to allege a dangerous probability of recoupment, it is questionable whether Plaintiff has alleged any probability of recoupment . . . . Plaintiff . . . therefore, has failed [to] allege antitrust standing.") (quoting *Matsushita v. Elec. Indus. Co., Ltd.*, 475 U.S. 574, 595 (1986)).

withholding the documents produced in the course of that investigation. Solyndra has waived any privilege as to documents produced in the House investigation.

*Second*, Rule 502(d) applies only if the disclosure is "connected with the litigation pending before the court," which U.S. Attorney criminal investigations are not. Indeed, Solyndra seems to want to utilize FRE 502(d) to permit "selective waiver"—the theory that because a party discloses "documents to the government, as opposed to a civil litigant, his actions did not waive the privilege as to the world at large." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012). The Ninth Circuit has rejected this theory, noting that "Congress has declined to adopt even [a] limited form of selective waiver," and specifically pointing to a statement of congressional intent relating to subdivision (d) of Rule 502 which notes that the Rule "does not provide a basis for a court to enable parties to agree to a selective waiver of the privilege, such as to a federal agency conducting an investigation." *Id.* at 1127–29 (citation omitted). Accordingly, a party waives privilege by disclosing documents to the government, even if did so pursuant to a confidentiality agreement entered into with the U.S. Attorney's Office. *See id.* at 1128–29. In sum, Solyndra will not need to conduct a privilege review of the documents it produced in the government investigations because it has waived any privilege it once held.

*Finally*, even assuming that Rule 502(d) applies and Solyndra has not waived privilege, Solyndra's burden argument lacks merit. Parties routinely review significant numbers of documents in discovery; here, Solyndra seeks $1.5 billion in damages and must therefore submit to commensurate discovery. Solyndra has failed to provide defendants or the Court with any substantiated basis by which to gauge the burden it claims. *See In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("[T]his Court finds that [the party resisting discovery] fails to support its claim of burden, making only a blanket objection without specifics sufficient to justify denying discovery. The objecting party has the burden to substantiate its objections.") (citation omitted); *U.S. E.E.O.C. v. ABM Indus. Inc.*, No. 1:07-CV-01428-LJO-TAG, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008) ("Defendants have not offered a declaration or an affidavit sufficiently describing the particulars of the burden compliance with such a request would impose on

Defendants. A bare assertion of undue burden without factual allegations does not suffice.") (citations omitted). While Solyndra intimates that it would have to review 1.5 million documents if the Court were to grant defendants' motion to compel (*see* Resp. at 7), that number is not substantiated. Given that Solyndra's exhibits refer to a large number of presumptively non-privileged documents that make up its earlier productions to the government, as well as a method that was utilized for identifying privileged documents during the process of production, it is highly unlikely that Solyndra would need to undertake anything approximating a full review of all the documents it produced to the government. Regardless, any burden to undertake a second-level review is part of what follows after filing weighty accusations against parties entitled to defend themselves, and is outweighed by the clear relevance of the documents at issue and their importance to this case.

### D. Conclusion

For the foregoing reasons, the Court should grant Defendants' motion to compel and order Solyndra to produce documents it already has collected and produced to the government in the course of the various investigations into Solyndra's failure and financial condition.

///

///

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated: November 10, 2014 | KIRKLAND & ELLIS LLP |
| | By: */s/ James R.P. Hileman* |
| | Daniel E. Laytin, P.C. (admitted *pro hac vice*) |
| | James Mutchnik, P.C. (admitted *pro hac vice*) |
| | James R.P. Hileman (admitted *pro hac vice*) |
| | 300 North LaSalle |
| | Chicago, IL 60654 |
| | Tel: (312) 862-2000 |
| | Fax: (312) 862-2200 |
| | |
| | Eliot A. Adelson |
| | 555 California Street |
| | San Francisco, California 64140 |
| | Tel: 415-439-1400 |
| | Fax: 415-439-1500 |
| | *Counsel for Trina Solar Limited and Trina Solar (U.S.), Inc.* |
| | |
| | SHEARMAN & STERLING LLP |
| | |
| | By: */s/ Jerome Fortinsky* |
| | |
| | Jerome Fortinsky |
| | 599 Lexington Ave |
| | New York, NY 10022-6069 |
| | Telephone: (212) 848-4900 |
| | |
| | Mikael A. Abye |
| | Four Embarcadero Center, Suite 3800 |
| | San Francisco, California 64111 |
| | Tel: 415-616-1100 |
| | Fax: 415-616-1199 |
| | *Counsel for Defendant Suntech America, Inc.* |
| | |
| | SIMPSON THACHER & BARTLETT LLP |
| | |
| | By: */s/ James Kreissman* |
| | James Kreissman |
| | 2475 Hanover Street |
| | Palo Alto, California 94304 |
| | Tel: 650-251-5000 |
| | Fax: 650-251-5002 |
| | |
| | Matthew J. Reilly (admitted *pro hac vice*) |
| | Michael J. Garvey (admitted *pro hac vice*) |
| | 1155 F Street, N.W. |
| | Washington, DC 20004 |
| | Tel: 202-636-5500 |
| | Fax: 202-636-5502 |
| | *Counsel for Defendants Yingli Green Energy Holding Co. Ltd. and Yingli Green Energy Americas, Inc.* |

## **ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the Northern District of California's Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: November 10, 2014        KIRKLAND & ELLIS LLP


 */s/ James R.P. Hileman*

James R.P. Hileman
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
*Counsel for Trina Solar Limited and Trina Solar (U.S.), Inc.*